873 P.2d 243

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Patricio Z. HERNANDEZ,**
**Defendant–Appellant.**

**No. 18716.**

Supreme Court of New Mexico.

April 6, 1994.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Sante Fe, for appellant.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

FRANCHINI, Justice.

Defendant Patricio Hernandez appealed his conviction for the first degree depraved-mind murder of Raymond Joe Clifford. De-

fendant submitted a motion for reconsideration of our opinion of February 3, 1993, which was granted. He claims numerous errors mandating reversal. The decisive issue, however, is whether there was sufficient evidence presented during the course of the trial to justify a conviction of Defendant for first degree depraved-mind murder. We note jurisdiction under SCRA 1986, 12–102(A)(2) (Repl.Pamp.1992), and hold that the evidence was not sufficient to convict Defendant of first degree depraved-mind murder. We reverse and discharge Defendant.

I

The following evidence, viewed in the light most favorable to sustaining the verdict was introduced at Defendant's trial. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). On July 4, 1988, the victim, Raymond Joe Clifford, observed a young male leave Defendant's residence and puncture the tire of a truck belonging to Billy Dominguez. The victim reported what he had seen to Dominguez and then related what he had observed to Defendant, who was the stepfather of the young male.

Some time later, Ruben Granger, Jr., Kelvin Baker, and the victim heard shouting coming from the rear of Defendant's house and proceeded to the backyard to render assistance. Defendant became angry because the men were interfering in his personal affairs and announced that he was going into his house to get his gun. Shortly thereafter, Defendant emerged from his house carrying a .22 caliber semi-automatic rifle, cocked the rifle, and attempted to fire it. When the rifle failed to discharge, Defendant again cocked the rifle and fired two shots in the direction of the victim and Baker. They ran toward the street and sought cover around the corner of Defendant's house. While Baker and the victim ran toward the street, Defendant followed and fired several more shots. There was no evidence that any of these shots hit the victim or anyone else. Defendant ceased firing and began walking back to his house. As Granger watched from behind a fence gate, the victim tackled Defendant from behind, knocking him to the

ground, and attempted to disarm him. While Defendant was on the ground, Granger entered the fray and twisted the rifle out of Defendant's hands. The victim stood up, said that he had been hit in the chest, ran a short distance, and fell to the ground. Defendant returned to his house. The victim was taken to a local medical center where he died. It is undisputed that both Defendant and the victim had been drinking and that the victim had a blood alcohol content of .124%.

Defendant was later bound over for trial in the district court on an open count of murder. At trial, the medical examiner testified that the victim was killed by a bullet fired from close range that entered the victim's chest. While Granger testified that no shots were fired during the struggle between Defendant and the victim, another witness, Pearl Martinez, testified that at least one bullet was fired during the struggle. The jury was instructed only on the charge of first degree depraved-mind murder pursuant to Uniform Jury Instruction 14–203, SCRA 1986, 14–203. The jury found Defendant guilty on that charge.

II

■ We cannot find sufficient evidence to warrant submission of the depraved-mind murder instruction to the jury. SCRA 1986, 14–203, was given to the jury as the third instruction:

The defendant is charged with first degree murder by an act greatly dangerous to the lives of others indicating a depraved mind without regard for human life. For you to find the defendant guilty, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant fired a rifle at a group of people;

2. The defendant's act caused the death of Raymond J. Clifford;

3. The act of the defendant was greatly dangerous to the lives of others, indicating a depraved mind without regard for human life;

4. The defendant knew that his act was greatly dangerous to the lives of others;
5. This happened in New Mexico on or about the 4th day of July, 1988.

It is obvious that the factual basis for elements one and two is not present in this case. First, Defendant did not fire a rifle at a group of people; he fired in the direction of or toward two people at two different times: namely, at the victim and Kelvin Baker in the back yard of his home and again at the victim and Baker as they ran toward the street in the front yard. All parties concur that this was the depraved mind "act" referred to in Jury Instruction three ("by an act"). Second, and most important, there is no evidence that any of these shots hit the victim or anyone else. In fact, the evidence indicates that the fatal shot was fired from between one to three feet at most, or alternatively, consistent with firing from a range of six to twenty-four inches. The only logical conclusion is that the fatal shot occurred during the struggle between Defendant, victim and Granger sometime after the depraved-mind act.

In addition, SCRA 1986, 14–251, was submitted to the jury as the fifth instruction:

For you to find the defendant guilty of First Degree Murder, the state must prove to your satisfaction beyond a reasonable doubt that the act of the defendant caused the death of Raymond J. Clifford.

The cause of a death is an act which, in a natural and continuous chain of events, produces the death and without which the death would not have occurred.

It is clear that "the act" of Defendant, as described in elements one and two of Jury Instruction three, could not have caused the death of the victim. Rather, the fatality was the result of Granger's attempt to twist the rifle away from defendant during the scuffle between him, Defendant, and the victim. This was an independent action, completely separate and apart from "the act" described in Jury Instruction three, elements one and two. This Court can accept, for the sake of argument, that there was proof sufficient to satisfy a jury beyond a reasonable doubt that, when he initially fired the rifle in his back yard in the direction of Baker and the

victim as they ran toward the street, Defendant knew he was greatly endangering those at whom he was shooting, indicating a depraved mind without regard for human life. We cannot, however, uphold a conviction of depraved-mind murder on an act occurring after the depraved mind has ceased. The depraved-mind action, therefore, was not the proximate cause of the victim's death.

■ In certain fact-specific circumstances, tort concepts of proximate cause and foreseeability may be helpful in defining a criminal intent at the moment of the act causing death. In a criminal case, however, it is the criminal intent at the time of the commission of the crime that is determinative. Just as it requires no period of time to form a deliberate intent to kill, so too, it does not require a certain period of time to abandon a pre-existing depraved mind.

Here, we hold that the depraved mind action, shooting toward two people at two different times, is distinguishable and separate from the shot which killed the victim. The attempt to disarm Defendant, the elapse of time between the initial random shooting and the shot fired during the struggle, the apparent change in Defendant's intent when he stopped the random shooting and returned to his house, all lead us to conclude there was *no evidence* that Defendant's initial depraved-mind action caused the victim's death. In other words, the initial act of Defendant, shooting indiscriminately at two people at two different times, could have been found by the jury to be a depraved-mind action and one done with a wicked and malignant heart. However, that depraved-mind action of the Defendant *did not proximately cause the victim's death.* On the contrary, all the evidence demonstrated that the victim was shot, at close range, in the struggle that occurred *after* his depraved-mind act. The depraved-mind action, that occurred well before the struggle, did not wound or kill the victim or anyone else.

In conclusion, we hold that there was not sufficient evidence to charge the jury on first degree depraved-mind murder. That being the only charge upon which the jury was instructed, the judgment and sentence of the court below cannot stand. We reverse the

judgment and sentence, dismiss the charges, and discharge Defendant.

IT IS SO ORDERED.

MONTGOMERY, C.J., and RANSOM, J., concur.

BACA and FROST, JJ., dissent.

BACA, Justice (dissenting).

I respectfully disagree with the majority's interpretation of depraved mind murder and consequently with the reversal of Defendant's conviction under NMSA 1978, Section 30-2-1(A)(3). Although it is possible that the jury could have found that the struggle that ensued after Defendant ceased firing at the victim and Baker was an independent action, completely separate and apart from Defendant's dangerous act of firing a weapon at persons on a public street, our task on appeal is solely to determine "whether *any* rational jury could have found each element of the crime to be established beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). The application of this standard, however, "does not involve substituting the appellate court's judgment for that of the jury in deciding the reasonable-doubt question." *Id.* The court must still view the evidence in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences in favor of a verdict of conviction, but must also "ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Id.* This standard does not require that we consider the "merit of evidence that may have supported a verdict to the contrary." *State v. Vigil*, 110 N.M. 254, 256, 794 P.2d 728, 730 (1990).

Depraved mind murder is defined as "the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused ... by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life." NMSA 1978, § 30-2-1(A)(3). This statute requires proof that the defendant had subjective knowledge that his act was greatly dangerous to the lives of others. *Ibn Omar–Muhammad*, 102 N.M. 274, 277, 694 P.2d 922, 925 (1985). It does not, however, require a specific intent to kill a specific person. *State v. Johnson*, 103 N.M. 364, 368, 707 P.2d 1174 (Ct.App.1985). "Even if the perpetrator had no specific intent to kill anyone, he would be guilty of depraved mind murder in the event someone dies as a result of his actions, because he acted in a manner greatly dangerous to others." *Id.* (citation omitted).

Here, a rational jury could have found that Defendant's action of chasing his neighbors up the street while firing a rifle was "greatly dangerous to the lives of others, indicating a depraved mind without regard for human life," and, under the circumstances, the jury could have concluded that Defendant was aware that these acts were "greatly dangerous to the lives of others." A rational jury could also have determined that Defendant's act caused the death of the victim. The victim attempted to wrestle the rifle away from Defendant because Defendant chased the victim and others up the street while firing the rifle at them. The cause of death, here, occurred due to a natural and continuous chain of events. This chain of events would not have occurred had Defendant not fired his rifle at his neighbors as they fled from his property. Applying our standard of review, there was substantial evidence to support Defendant's conviction even though the evidence may have also supported a verdict to the contrary.

For the reasons stated, I respectfully dissent.

FROST, J., concurs.