897 P.2d 225

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Michael J. HANDA, Defendant–Appellant.**

**No. 15541.**

Court of Appeals of New Mexico.

April 12, 1995.

Certiorari Denied May 31, 1995.

Tom Udall, Atty. Gen., Shari Weinstein, Sp. Asst. Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Charles W. Daniels, Nancy Hollander, Gary Wayne Nelson, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, for defendant-appellant.

*OPINION*

FLORES, Judge.

Defendant appeals his conviction and sentence for two counts of assault with intent to commit a violent felony on a peace officer, one count of being a felon in possession of a firearm, and one count of being a habitual offender. Defendant raises five issues on appeal: (1) whether Defendant's guilty plea bars him from raising his double jeopardy claims on appeal; (2) whether Defendant's conviction for two counts of assault with intent to commit a violent felony on a peace officer was in violation of Defendant's double jeopardy rights in that Defendant's acts constituted a single offense; (3) whether the trial court lacked jurisdiction to adjudicate and sentence Defendant as a habitual offender because no criminal information charging him as a habitual offender was made part of the record; (4) whether the use of Defendant's conditional discharge was improper because it did not constitute a prior conviction at the time Defendant was sentenced; and (5) whether using Defendant's prior conditional discharge to prove both the crime of felon in possession of a firearm and his status as a habitual offender violated Defendant's double jeopardy rights.

With regard to the first issue, we hold that Defendant is not barred from raising his double jeopardy claim on appeal and address the issue on the merits. We reverse on the second issue, and hold that two convictions and punishments for assault violated Defendant's double jeopardy rights. We reject Defendant's arguments on the third issue, and hold that the criminal information charging Defendant as a habitual offender was made part of the record. As to the fourth issue, we also reject Defendant's argument. We cannot allow Defendant to profit from breaching his agreement with the trial court that he would agree to the use of his prior conditional discharge for sentencing purposes and would not raise that issue on appeal. Finally, since we determine that the use of Defendant's conditional discharge was proper under the facts and circumstances of this case, we address issue five and hold that the use of Defendant's conditional discharge to

convict him of felon in possession of a firearm and to enhance his sentence for assault on a peace officer did not violate double jeopardy.

*FACTS AND PROCEDURAL BACKGROUND*

On March 8, 1990, State Police Officer Fred Laird stopped Defendant near La Cienega, New Mexico, because Defendant's vehicle had broken lights. Defendant was in the driver's seat and there was one passenger in the vehicle. Officer Laird approached the vehicle, obtained Defendant's license, and returned to his patrol car to do a computer check. The computer check revealed an outstanding warrant for Defendant on a probation violation. Officer Laird returned to Defendant's vehicle and informed Defendant that he was placing him under arrest. Defendant pointed a gun at Officer Laird and fired three shots.

Defendant was indicted on three counts of attempt to commit a felony, to wit: first degree murder, or in the alternative, assault with intent to commit a violent felony on a peace officer. Defendant was also indicted on one count of being a felon in possession of a firearm. Defendant filed a motion to strike Counts II and III of the indictment, alleging that the State was violating Defendant's double jeopardy rights by charging him with three counts of attempted first degree murder, or in the alternative, assault with the intent to commit a violent felony on a peace officer. Defendant argued that the act of firing three successive shots at Officer Laird constituted a single offense, whether of attempted murder or assault. The trial court denied the motion to strike.

Thereafter, pursuant to a written plea agreement, Defendant pleaded guilty to two counts of assault with intent to commit a violent felony on a peace officer (Counts I and II of the indictment), one count of being a felon in possession of a firearm, and one count of being a habitual offender. One count of assault with intent to commit a violent felony on a peace officer (Count III), was dismissed.

On December 10, 1990, Defendant filed a sentencing memorandum raising the same double jeopardy claim previously addressed in Defendant's motion to strike. At his sentencing hearing, on December 12, 1990, Defendant again raised the double jeopardy issue. The trial court again considered the issue, rejected it, and sentenced Defendant to a total of twenty years.

Following entry of the trial court's judgment and sentence, Defendant's counsel failed to file a timely appeal. Thereafter, the public defender's office appealed the case on behalf of Defendant. This Court, by memorandum opinion, dismissed Defendant's appeal because the notice of appeal was untimely. *State v. Handa*, No. 13,174 (N.M.Ct.App. July 10, 1992), *cert. denied*, 114 N.M. 123, 835 P.2d 839 (1992). Defendant then filed a petition for a writ of habeas corpus with the First Judicial District Court, requesting that the court vacate the judgment and sentence and enter a new judgment and sentence either (1) sentencing Defendant to no more than one statutory term for assault with intent to commit a violent felony against Officer Laird, or (2) allowing Defendant to file a timely appeal. The court granted the writ on the ground that Defendant had been denied his constitutional right to appeal and resentenced Defendant, thus, giving Defendant an opportunity to file a timely appeal. During the habeas corpus hearing, Defendant raised an additional double jeopardy claim, contending that the State had used the same prior felony to prove both the crime of felon in possession of a firearm and his status as a habitual offender. The court rejected the argument and resentenced Defendant to the same twenty-year sentence previously imposed. Defendant appealed.

*DISCUSSION*

I. Right of Appeal

We first address the State's argument that we are precluded from reaching the merits of Defendant's double jeopardy claim. Relying on *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the State argues that by pleading guilty to two counts of assault on a peace officer, Defendant is barred from asserting his double jeopardy claims on appeal. We disagree, and rely on *State v. Jackson*, 116 N.M. 130, 860 P.2d 772 (Ct.App.), *cert. denied*, 115 N.M. 795, 858

P.2d 1274 (1993), where we applied the exception adopted in *Broce* and New Mexico's anti-waiver statute.[1] *Id.* at 132–33, 860 P.2d at 774–75.

■ The general rule is that a guilty plea waives a Defendant's right to appeal. *See State v. Ball*, 104 N.M. 176, 184, 718 P.2d 686, 694 (1986); *Baird v. State*, 90 N.M. 667, 670, 568 P.2d 193, 196 (1977). Here, the State contends that Defendant signed a plea and disposition agreement which contained a standard waiver provision, without reserving his right to appeal. *See Baird*, 90 N.M. at 670, 568 P.2d at 196. However, we hold that under *Jackson*, we may address the merits of Defendant's double jeopardy claims.

■ Before turning to *Jackson*, we address the State's request to apply *State v. Hodge*, 118 N.M. 410, 882 P.2d 1 (1994) in order to bar Defendant from raising his double jeopardy claim on appeal. *Hodge* held valid the procedure whereby a defendant may use a conditional guilty plea or nolo contendere to reserve specific issues for appeal. *Id.* at 415–16, 882 P.2d at 6–7. Such a plea must be in writing and must specify a particular pretrial issue for appeal with the approval of the court and the consent of the prosecution. *Id.* at 416, 882 P.2d at 7.

■ Since this case was on appeal at the time that *Hodge* was decided, we agree that *Hodge* applies here. *See State v. Kurley*, 114 N.M. 514, 518, 841 P.2d 562, 566 (Ct.App.), *cert. denied*, 114 N.M. 413, 839 P.2d 623 (1992). However, we conclude that this does not bar our review of Defendant's double jeopardy claim in this instance. In applying *Hodge*, we note that there is a difference between "preserving" and "reserving" an issue for appeal. "One *preserves* an issue for appeal by invoking a ruling from the court on the question; one *reserves* an issue for appeal ... by specifying the issue as a condition to a plea of guilty...." *Hodge*, 118 N.M. at 418, 882 P.2d at 9. In this case, Defendant properly preserved the double jeopardy issue by invoking a ruling from the

trial court on his motion to strike. The crucial question under *Hodge* is whether Defendant reserved the issue for appeal. *Id.* We determine that under the particular facts and circumstances in this case, he did reserve his right to raise the double jeopardy defense.

"[T]he critical requirements for a conditional plea are that the defendant express an intention to reserve a particular pretrial issue for appeal and that neither the prosecution nor the trial court oppose such a plea." *Id.* at 417, 882 P.2d at 8. In *Hodge*, our Supreme Court interpreted these requirements leniently "in light of Defendants' ignorance of any specific requirements for conditional pleas when they entered their guilty pleas, and in light of the fact that it was obvious to all concerned that each defendant intended to seek an appellate ruling on the question [at issue]." *Id.* We do the same in this case.

■ Here, Defendant filed a motion to strike Counts II and III from the indictment on double jeopardy grounds, which the trial court denied. Prior to the sentencing hearing, Defendant filed a sentencing memorandum asking the court to reconsider his motion to strike. At the sentencing hearing, Defendant again raised the double jeopardy issue and asked the court to merge the counts to which he pleaded guilty. After denying Defendant's request to merge the counts, the trial judge stated: "I suppose it would not shock me though that a specific panel of our appellate court could find that it was all one continuous act...." Taking all of this into consideration, we believe it was obvious to both the trial court and the State that Defendant intended to seek appellate review on the question of whether convicting and punishing him for two counts of assault violated his double jeopardy rights. Neither the trial court nor the State indicated that they were opposed to Defendant seeking appellate review of the double jeopardy issue. Moreover, because *Hodge* was not decided

---

1. The relevant portion of NMSA 1978, Section 30–1–10 (Repl.Pamp.1994), which has not changed since the 1984 Replacement Pamphlet cited in *Jackson*, states:

No person shall be twice put in jeopardy for the same crime. The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment.

until after Defendant entered a guilty plea, Defendant had no reason to doubt his right to raise his double jeopardy claim on appeal, particularly in light of New Mexico's anti-waiver statute and *Jackson*.

In *Jackson*, we held that a defendant who pleaded guilty could still appeal a conviction on double jeopardy grounds. *Jackson*, 116 N.M. at 132–33, 860 P.2d at 774–75. In doing so, we addressed *Broce* and the exception recognized therein. *Broce* held that if a guilty plea is counseled and voluntary, then a collateral attack based on double jeopardy is typically barred. *Broce*, 488 U.S. at 574, 109 S.Ct. at 764–65. The exception is that a guilty plea does not waive a claim that on its face is one that the state cannot constitutionally prosecute. *Id.* at 575, 109 S.Ct. at 765–66. This exception applies where the state is barred from bringing certain charges because the defendant has already been tried on those charges, or because the charges were brought in retaliation for the exercise of protected rights. *See id.* In such cases, it is plain "on the face of the record the court had no power to enter the conviction or impose the sentence." *Id.* at 569, 109 S.Ct. at 762. The United States Supreme Court noted that "the guilty pleas are alone a sufficient basis for [the] conclusion" of whether the defendant was charged with two identical counts of conspiracy. *See id.* at 571 n*, 109 S.Ct. at 763 n*.

Applying the *Broce* exception and New Mexico's anti-waiver statute, we held, in *Jackson*, that the defendant did not waive the right to appeal his double jeopardy claims. *Jackson*, 116 N.M. at 132–33, 860 P.2d at 774–75. We determined that based on the record at the time of the plea, the defendant's two conspiracy convictions violated his double jeopardy rights. *Id.* at 132, 860 P.2d at 774. Moreover, we held that under New Mexico's anti-waiver statute, " 'double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment.' " *Id.* at 132–33, 860 P.2d at 774–75 (quoting Section 30-1-10). After deciding that we could address the double jeopardy claims on the merits, we held that convicting and punishing the defendant for two conspir-

acies violated his double jeopardy rights. *Id.* at 132, 860 P.2d at 774.

The State criticizes *Jackson* for misinterpreting the *Broce* exception and argues that the exception is inapplicable to this case. We disagree. The facts of *Broce* revealed that the indictments alleged two distinct agreements underlying the two separate counts of conspiracy. *Broce*, 488 U.S. at 570, 109 S.Ct. at 762–63. The first agreement began in 1978 to rig bids on one specified highway project and the second began fifteen months later to rig bids on a different project. *Id.* The United States Supreme Court found that when the defendants "pleaded guilty to two charges of conspiracy on the explicit premise of two agreements which started at different times and embraced separate objectives, they conceded guilt to two separate offenses." *Id.* at 571, 109 S.Ct. at 763.

On the other hand, in *Jackson*, the defendant was charged with two counts of conspiracy to commit armed robbery that were identically worded except for the names of the victims. *Jackson*, 116 N.M. at 133, 860 P.2d at 775. Therefore, we held that the facts of *Broce* were distinguishable, applied the *Broce* exception, and addressed the appeal on the merits. *Id.* at 132, 860 P.2d at 774; *see also Thomas v. Kerby*, 44 F.3d 884, 888 (10th Cir.1995) (recognizing qualification on waiver rule announced in *Broce* whereby claim not waived if double jeopardy violation apparent on face of the indictment and/or the record at the time of the plea). Similarly, in this case, Defendant's indictment under Counts I, II, and III for attempt to commit a felony, to wit: first degree murder, or in the alternative, assault with intent to commit a violent felony on a peace officer were identically worded, including the name of the victim. Applying the analysis of *Jackson*, Defendant in this case did not plead guilty to charges that, on their face, described separate and distinct offenses. *Contra Broce*, 488 U.S. at 575–76, 109 S.Ct. at 765–66. Rather, the charges in all three counts of the indictment appeared to be identical. Moreover, in *Jackson*, we recognized that our anti-waiver statute permits a defendant to raise a double jeopardy claim at any time after judgment.

*Jackson,* 116 N.M. at 132–33, 860 P.2d at 774–75. No similar waiver provision was considered in *Broce.* Thus, we decide to reach the merits of Defendant's double jeopardy claims.

## II. Double Jeopardy

Since we have decided that we will reach the merits of Defendant's double jeopardy claims, we next address whether Defendant's acts constituted a single offense or multiple offenses. Defendant contends that he was subjected to multiple convictions and punishments in violation of the double jeopardy clauses of the United States and New Mexico Constitutions for acts that constituted a single offense.

■ The proper unit of prosecution for determining the number of assaults with which Defendant should have been charged has not yet been addressed by New Mexico courts. However, we previously adopted the guidelines set out in a criminal sexual penetration case decided by our Supreme Court and applied them to a battery case. *State v. Mares,* 112 N.M. 193, 199, 812 P.2d 1341, 1347 (Ct.App.), *cert. denied,* 112 N.M. 235, 814 P.2d 103 (1991) (citing *Herron v. State,* 111 N.M. 357, 805 P.2d 624 (1991)). The factors in determining whether acts are separate and distinct include "the time between criminal acts, the location of the victim at the time of each criminal act, the existence of any intervening event, distinctions in the manner of committing the criminal acts, the defendant's intent, and the number of victims." *Mares,* 112 N.M. at 199, 812 P.2d at 1347 (citation omitted).

The relevant portion of the statute under which Defendant was convicted states:

> A. Assault with intent to commit a violent felony upon a peace officer consists of any person assaulting a peace officer while he is in the lawful discharge of his duties *with intent* to kill the peace officer.

NMSA 1978, § 30–22–23 (Repl.Pamp.1994) (emphasis added). To find separate and distinct acts, the record must establish that Defendant's intent to kill Officer Laird existed before the first shot, the intent ceased, and then the intent was reformulated before any subsequent shots. *See State v. Brooks,* 117 N.M. 751, 755, 877 P.2d 557, 561 (1994) (state required to show separate intent for each taking to convict the defendant of several acts of embezzlement under the single larceny doctrine).

The day after the incident, Defendant provided a statement regarding the shooting. Defendant admits in his brief in chief that after he fired the first shot at Officer Laird,

> He looked really surprised and hurt.
>
> \*  \*  \*  \*  \*  \*
>
> I don't recall firing three other rounds, I shot at him and then I shot in his direction after he fell down.
>
> \*  \*  \*  \*  \*  \*
>
> Twice, I shot two more times in his direction, cause you know, I knew he wasn't dead you know, and I wanted him to leave me alone and I figured it would scare him you know.
>
> \*  \*  \*  \*  \*  \*
>
> I saw him on the ground, and I saw him, he looked like he was hurt, but I knew he wasn't dead you know, and that's why I fired the other two rounds, to scare him, cause I figured, you know, he's either going to shoot me back, you know and kill me, or he'll leave me alone you know.

■ The State argues that this predicate supports an inference that Defendant shot Officer Laird with the intent to kill him with the first shot. The State further argues that at the completion of that act, Defendant paused and upon seeing that Officer Laird was hit, but not dead, decided that Officer Laird needed to be shot again. Defendant then fired two more shots in Officer Laird's direction. Therefore, the State contends that Defendant formulated the intent to kill once and then reformulated the intent again after assessing the situation, thereby justifying two counts of assault. We disagree.

We note that the State initially brought three identical counts of assault against Defendant, presumably on the assumption that each shot fired by Defendant would serve as the basis for a separate offense. However, just as each penetration may not serve as the basis for separate counts of criminal sexual

penetration without first establishing separate and distinct acts, *Herron*, 111 N.M. at 361–62, 805 P.2d at 628–29, neither can each shot fired, without further proof that each shot was a separate and distinct act, serve as the basis for separate counts of assault. Thus, absent proof that each act of pulling the trigger was somehow distinct from the others, we conclude that only one assault occurred.

We find no evidence in the record to support the existence of more than a single, continuous intent. Defendant's statement fails to establish that separate and distinct acts arose as a result of a separate, independent intent. *See Mares*, 112 N.M. at 200, 812 P.2d at 1348 ("[T]he record [did] not prove that the intent behind the attack changed during the course of the attack."). Here, the successive shots were all pursuant to a single, continuous intent to execute a single, overall objective: to kill Officer Laird. The three shots were not separate and considered distinct acts but part of a single contact arising from a single, sustained intent. Thus, each shot was accompanied by "one protracted intention" such "that [they] may be implicated within a single charge." *State v. Pedroncelli*, 100 N.M. 678, 681, 675 P.2d 127, 130 (1984).

Nor are we convinced by the argument that the time between the shots constituted an intervening event. In *Mares*, we determined that because the record failed to indicate the time between criminal acts, mere speculation was not sufficient to support a verdict of multiple batteries. *Mares*, 112 N.M. at 200, 812 P.2d at 1348. During the course of the battery, another vehicle drove up and apparently interrupted the defendant so that he found it necessary to move the victim to the bushes. *Id.* We noted that the testimony failed to reveal how much of an intervention there was. *Id.* In considering the lapse of time, this Court stated, "[w]e cannot determine whether it was but for a moment, or for an extended period of time." *Id.* We concluded that the incidents of bat-

tery including choking and hitting the victim in the car, on the ground, and in the bushes, all entailed "one violent rampage with little time between offensive contacts." *Id.* Accordingly, we held that, as a matter of law, the defendant was guilty of only one count of aggravated battery. *Id.*

Similarly, in this case, it appears that there was little, if any, time between the first and subsequent shots. A statement from Officer Laird taken approximately two to two and a half hours after the shooting indicates that Officer Laird's impression was that it was one incident. He described the event as follows:

> [I]t's not like after the first shot he tried following up, I think he just, and it's just a personal opinion, there again, you know, I think he shot, he just kept, kept squeezing because I didn't see the gun come out of the window like he was following me down. . . .
>
> I never heard any ricochets or anything like it was hitting the pavement around me or I never heard any whizzes go by me or anything, so I think they just went straight up in the air.

Furthermore, unlike *Mares* where the record established that the beating took place in three different locations, in this case, all three shots were fired in the same location. Therefore, the similarity of the location and the way the shots were fired, the temporal proximity of the shots,[2] the defendant's intent, and the absence of an intervening event all indicate one continuous act, and thus, one assault. See *State v. Gonzales*, 113 N.M. 221, 224, 824 P.2d 1023, 1026 (1992) (multiple shots fired in rapid succession into victim's truck not "separated by either time or space" constituted one criminal act). We hold that an assault arising from a series of three successive shots to a single victim, not separated by a significant amount of time, and arising from a single, continuous intent constitutes one offense under Section 30–22–23.

---

2. We emphasize that the time between each act is not dispositive. For example, if multiple shots are fired all pursuant to a single, continuous intent, they constitute a single offense, irrespective of whether an extensive period of time elaps-

es between each shot. The proximity in time between criminal acts merely indicates that "the greater the interval between acts[,] the greater the *likelihood* of separate offenses." *Herron*, 111 N.M. at 361, 805 P.2d at 628 (emphasis added).

Under these facts, reasonable minds could not disagree that only one assault was committed. Thus, we hold that, as a matter of law, the record in this case establishes that Defendant was guilty of one assault. As such, convicting and sentencing Defendant on two counts of assault violated Defendant's double jeopardy rights.

### III. Filing of Information

█ Defendant acknowledges that there was a great deal of discussion regarding the supplemental information being filed, but claims that the State failed to file it. However, the record shows that the supplemental information charging Defendant as a habitual offender was given to the trial court. The judge stated on the record that the information "is received and filed herewith in open court." Defendant made no objection to the supplemental information being filed and agreed to waive any right he may have had with regard to this issue. Thereafter the trial judge apparently failed to file the supplemental information with the court clerk. Nevertheless, we hold that the supplemental information was properly filed in open court.

### IV. Conditional Discharge

Defendant argues that enhancing his sentence using a prior conditional discharge violated the Criminal Sentencing Act, NMSA 1978, § 31–18–17 (Repl.Pamp.1994), because a conditional discharge did not constitute a prior conviction in 1990 when he was initially sentenced.

Although the current Section 31–18–17 permits the use of a conditional discharge as the underlying conviction for enhancement purposes, that was not the case in 1990, when Defendant was initially sentenced. Section 31–18–17 was amended in 1993 to allow a conditional discharge to be used as a prior conviction for habitual purposes. NMSA 1978, Section 31–18–17 (Cum.Supp.1993). Prior to that time, a conditional discharge was not enumerated as a type of "prior conviction" for enhancement purposes.

In response, the State argues that at the plea proceeding it was Defendant who suggested that the State use Defendant's conditional discharge for cocaine possession rather than an Oregon conviction for burglary. The record shows that after some discussion of the problem with using a conditional discharge that had not been adjudicated, defense counsel stated that they would forego any appeal on that issue. Thus, the State argues that Defendant waived any right he may have had to object to the use of a conditional discharge.

Prior to entry of the plea, the State gave notice that it intended to introduce a certified copy of a judgment from Oregon to show that Defendant had a prior felony conviction for burglary. At the plea proceeding, however, defense counsel urged the prosecutor to use the conditional discharge. Defense counsel represented that, although Defendant had pled to an adult felony in Oregon, Defendant was actually a juvenile when he committed the crime. The State's prosecutor noted that there was a "minor problem" in defense counsel's proposal because a conditional discharge was not an actual adjudication.

After further discussion, defense counsel stated that Defendant would agree to forego any appeal on use of the conditional discharge. The prosecutor agreed to that proposal, as long as Defendant himself understood the issue and waived any appeal on the use of the conditional discharge. The trial judge then spoke directly to the Defendant. The judge told Defendant that there was a legal issue concerning whether the conditional discharge could be used for certain enhancement purposes or to show habitual offender status. The court asked if Defendant understood the agreement proposed by defense counsel, and allowed the Defendant to consult with his attorney. After a brief consultation, Defendant represented to the court that he had no questions about the proposal.

A supplemental information based on the conditional discharge was later filed in open court. The supplemental information alleged that Defendant had been convicted of cocaine possession and conditionally discharged on or about July 7, 1989. Defendant then admitted that he was the same person convicted of felony cocaine possession on July 7, 1989.

█ "[T]o allow a defendant to invite error and to subsequently complain about

that very error would subvert the orderly and equitable administration of justice." *State v. Young,* 117 N.M. 688, 690, 875 P.2d 1,119, 1121 (Ct.App.), *cert. denied,* 117 N.M. 773, 877 P.2d 579 (1994). Furthermore, the doctrine of fundamental error has no application in cases where the defendant, by his own actions, invites error. *State v. Bankert,* 117 N.M. 614, 622, 875 P.2d 370, 378 (1994); *State v. Padilla,* 104 N.M. 446, 450–51, 722 P.2d 697, 701–02 (Ct.App.), *cert. denied,* 104 N.M. 378, 721 P.2d 1309 (1986). While it is true that the trial court cannot impose an unauthorized sentence, even where the defendant agrees to it, *State v. Crespin,* 96 N.M. 640, 642–43, 633 P.2d 1238, 1240–41 (Ct.App.1981), that is not the issue before us. The issue is whether a defendant can knowingly and voluntarily inform the trial judge that he will not raise an issue on appeal and then renege on that representation.

This Court cannot allow Defendant to represent to the trial court that no appellate challenge will be made to the use of the conditional discharge, and then turn around and seek to contest the use of that discharge in this Court. *Cf. Hodge,* 118 N.M. at 414, 882 P.2d at 5 (plea of guilty "when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights, including the right to appeal"). Thus, we hold that the trial court did not err in using the conditional discharge to enhance Defendant's sentence.

V. Double Use of Conditional Discharge

■ Relying on *State v. Haddenham,* 110 N.M. 149, 151–54, 793 P.2d 279, 281–84 (Ct. App.), *cert. denied,* 110 N.M. 183, 793 P.2d 865 (1990), Defendant argues that using his conditional discharge as the prior felony both to convict him as a felon in possession of a firearm and to enhance his assault sentences under Section 31–18–17 violated his double jeopardy rights. We disagree.

In *Haddenham,* we held that using the same prior felony convictions both to enhance the defendants' sentences for felon in possession of a firearm and to prove that the defendants were felons, an element of the underlying conviction for felon in possession of a firearm, violated the defendants' double jeopardy rights. *Id.* at 154, 793 P.2d at 284; *accord State v. Najar,* 118 N.M. 230, 880 P.2d 327 (Ct.App.), *cert. denied,* 118 N.M. 90, 879 P.2d 91 (1994); *State v. Yparrea,* 114 N.M. 805, 845 P.2d 1259 (Ct.App.1992), *cert. denied,* 114 N.M. 720, 845 P.2d 814 (1993). Here, Defendant's conditional discharge was used to prove that he was a felon in order to convict him of felon in possession of a firearm. However, unlike *Haddenham,* Defendant's conditional discharge was not used to enhance his sentence for that same conviction. Rather, it was used to enhance Defendant's sentence for the underlying assault convictions. Therefore, we find *Haddenham* distinguishable from the instant case and conclude that there was no double jeopardy violation.

*CONCLUSION*

Although Defendant specifically challenges only the second count of assault and the sentence enhancement, we treat his appeal as a request to vacate the entire plea. *Jackson,* 116 N.M. at 135, 860 P.2d at 777 (citing *State v. Gibson,* 96 N.M. 742, 743, 634 P.2d 1294, 1295 (Ct.App.1981)) ("[A] plea bargain stands or falls as a unit ... [d]efendant may not be relieved of a part of his plea bargain without giving up benefits he received in the bargain."). Thus, on remand, Defendant is entitled to have his plea vacated, if the State agrees. *Id.* at 135, 860 P.2d at 777. However, the State may choose to accept the sentence previously imposed, as corrected by our requirement that one assault conviction and sentence be vacated. *See id.*

IT IS SO ORDERED.

ALARID and BLACK, JJ., concur.