This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. 27,617**

**LARRY A.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William Birdsall, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

In October 2005, on a county road in Bloomfield, New Mexico, a shootout took place in which one person was killed and two others suffered life-threatening gunshot

wounds. As a result of the shootout, Child was charged with assault, battery, shooting at a motor vehicle, and unlawful possession of a firearm. Following a jury trial, Child was convicted of all the charges against him except battery. Because Child was a juvenile, the trial court held an amenability hearing to determine whether Child should be sentenced to adult or juvenile sanctions and concluded that Child was not amenable to treatment. The court sentenced Child to a total of thirteen years' incarceration in an adult facility. Child appeals and, for the following reasons, we affirm Child's conviction and the sentence imposed against him.

**BACKGROUND**

The events leading up to Child's conviction began early in the day on October 21, 2005. Carlos Escobar, the only person killed in the shootout, apparently owed a debt to Anthony Jacquez, a friend of Child. Jacquez and Thomas Vigil, another friend of Child, had apparently beaten up Escobar earlier in the day in an argument over the debt. Eventually, Escobar and two friends, Jacob Young and Troy Martin, drove to Vigil's house in Escobar's pickup. Shortly after this, Vigil pulled up in another vehicle, got out, approached Escobar's vehicle, and began shouting and throwing rocks at Escobar's truck. Vigil then punched Escobar in the face repeatedly, at which point Escobar pulled out a gun and fired four shots, seriously wounding Vigil.

During the altercation between Vigil and Escobar, Child, according to a statement he gave to the police, had been sitting on the porch of his friend's house across the street. When he saw Vigil fall to the ground after being shot, Child "bust[ed] out his guns" and started "blasting" at Escobar's truck as it reversed away from Vigil's house. Child stated that he had two guns in his pants and was shooting both of them as he ran down the street toward the truck and Vigil. While Child maintained that he was the only one shooting at the truck, witnesses at the scene testified that there were as many as three other individuals with Child who may or may not have been shooting. One witness positively identified Child in the group of people and testified that Child was shooting at the truck.

As the gunfire subsided, the truck, which had been reversing out of Vigil's driveway, rolled into a nearby ditch. Escobar, the driver of the truck, was dead in the driver's seat, Young, the front passenger, had been hit twice and was severely wounded with injuries to his liver and his right lung, while Martin, the backseat passenger, escaped the vehicle, having only been grazed by a bullet.

Child was later arrested and charged with assault, battery, shooting at a motor vehicle, and unlawful possession of a firearm. Following a jury trial, Child was convicted of all the charges against him except battery. Child appeals.

## DISCUSSION

### Jury Instructions

Child first argues that the jury instructions on the charge of shooting at or from a motor vehicle were incorrect and violated his due process rights because the instructions named a victim not identified in the information and removed the question of causation from the jury. The instruction given to the jury required the jury to find that Child "willfully shot a firearm at a motor vehicle with reckless disregard for another person" and that "[t]he shooting caused great bodily harm to . . . Young and/or . . . Escobar." However, the criminal information had not named Escobar; rather, it named only Young and Martin as the victims.

Child contends that allowing the jury to consider the harm inflicted upon Escobar violated his due process rights because Escobar was not named as a victim in the information and thus, the trial court had implicitly found that there was no probable cause that Child was involved in Escobar's death. The State contends, however, that Child not only failed to preserve this issue below, but that he also invited the error he now alleges on appeal. We agree.

In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling on it. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M.

4

454, 993 P.2d 1280. On appeal, we will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error. *In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431. While we will consider an unpreserved issue that involves fundamental error, "the doctrine of fundamental error has no application in cases where the defendant, by his own actions, invites error." *State v. Handa*, 120 N.M. 38, 46, 897 P.2d 225, 233 (Ct. App. 1995).

At trial, defense counsel moved for a directed verdict on the charge of shooting at or from a motor vehicle, arguing that there was no evidence that Child fired a bullet that hit Young. In response, the State argued that there was evidence that Child was the only shooter and that both Escobar and Young had suffered great bodily injury. Defense counsel then argued that Child was "not charged with any count involving . . . Escobar" and that the trial court had found at a preliminary hearing that there was "no probable cause binding over for shooting at . . . Escobar." The State pointed out that the charge alleged only that Child had shot at a motor vehicle and had caused great bodily harm.

The following morning, defense counsel appeared to have abandoned his argument regarding Escobar's absence from the information because he did not raise the issue during the discussion about jury instructions. Defense counsel advised the court that the only two issues remaining regarding the jury instructions involved the

wording of a self-defense instruction and the question whether Child could assert self-defense in connection with the charge of possession of a firearm. After some discussion regarding these two issues, the court went off the record to sort out the order of the instructions in the instruction packet.

Back on the record, defense counsel indicated that he had duplicate instructions in his packet for the charge of shooting at or from the motor vehicle. The State advised that the two instructions were in fact slightly different because one listed the victims as Young and/or Escobar and the other listed them as "occupant or occupants." Following this, the parties agreed to remove the "occupants" instruction and leave the instruction naming Young and Escobar. After Child's conviction, his counsel filed a motion for a new trial but notably did not challenge the jury instruction on shooting at a motor vehicle.

Because Child did not make any objection to the use of the jury instruction he now challenges, we conclude that he failed to preserve the issue and that we are therefore precluded from considering whether the trial court erred in giving the instruction. *See State v. Nguyen*, 2008-NMCA-073, ¶ 22, 144 N.M. 197, 185 P.3d 368, *cert. denied*, 2008-NMCERT-004, 144 N.M. 47, 183 P.3d 932. While Child initially raised some concern regarding the proposed jury instruction during his motion for a directed verdict, he did not raise the issue when the trial court was

6

actually considering the instructions, and he specifically advised the trial court that the only issues he had with the instructions were limited to a self-defense instruction and the possession of a firearm instruction. Thus, to the extent that Child apprised the trial court of his objection to using Escobar's name in the instruction on shooting at or from a vehicle, he failed to invoke a ruling on whether using Escobar's name was appropriate because he failed to challenge the instruction. *See Varela*, 1999-NMSC-045, ¶ 25 (requiring a defendant to apprise the trial court of the error *and* to invoke an intelligent ruling on the error). Further, because Child specifically assented to the instruction given, we conclude that he invited the alleged error such that we are also precluded from considering whether any alleged error constitutes fundamental error. *See Handa*, 120 N.M. at 46, 897 P.2d at 233.

**Sufficiency of the Evidence**

Child next contends that there was insufficient evidence for the jury to find him guilty of shooting at a motor vehicle because the State failed to prove that a bullet he fired made contact with either Young or Escobar. In reviewing a challenge to the sufficiency of the evidence, we "must first determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Trujillo*, 2002-NMSC-005, ¶ 23, 131 N.M. 709, 42 P.3d 814 (internal quotation marks

and citation omitted). In doing so, we "must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* (internal quotation marks and citation omitted). Our duty is not to "reweigh the evidence or substitute our judgment for that of the jury" but "to determine whether any rational jury could have found each element of the crime to be established beyond a reasonable doubt." *Id.* ¶¶ 23, 28 (emphasis omitted) (internal quotation marks and citation omitted). Child argues only that there is insufficient evidence to support the element of the offense that he caused great bodily harm to Young and/or Escobar. We therefore limit our consideration to this element of the offense.

As the sole support for his argument that there is insufficient evidence supporting this element, Child cites *State v. Hernandez*, 117 N.M. 497, 873 P.2d 243 (1994), a case where our Supreme Court concluded that there was insufficient evidence to support a defendant's conviction for depraved mind murder. In *Hernandez*, the defendant had fired a rifle at two people in his backyard and then again fired at them while they ran down the street away from the defendant's home. *Id.* at 499, 873 P.2d at 245. A short time later, one of the people returned to the defendant's home and was shot in the chest during a struggle over the rifle. *Id.* In reversing the defendant's conviction, the Court noted that there was no evidentiary

8

link between the elements of depraved mind murder that the jury was required to find. *Id.* While there was clear evidence that the defendant had acted in disregard for the lives of others by firing his rifle at the two fleeing individuals, there was no evidence that the depraved act was linked to the eventual shooting of the victim because the victim was not shot in the course of the defendant's depraved act. *Id.* Instead, the victim's shooting was a separate event that occurred after the depraved act when the victim returned to the defendant's home and struggled to obtain the rifle. *Id.*

Child contends that, as in *Hernandez,* there is no evidence linking his act of shooting a gun at the vehicle containing Escobar and Young to the injury to Young or the death of Escobar. Unlike in *Hernandez,* however, there is no gap in the sequence of events that separates Child's act of shooting at the vehicle from the injuries inflicted upon Young. In fact, Young testified that he was not shot until the second round of gunfire which, according to Child's confession, Child was solely responsible for. Thus, the jury was permitted to conclude that Child was responsible for Young's injuries since they occurred contemporaneously with Child's act of shooting at the vehicle. In addition, while there was some testimony that Vigil shot Escobar, there was also testimony that Vigil did not fire a weapon, and that Escobar was shot in the volley of gunfire which Child confessed to being responsible for. Thus, there was evidence that supports a theory that Child was also responsible for the

9

death of Escobar. *See Trujillo*, 2002-NMSC-005, ¶¶ 25-29 (rejecting an argument similar to Child's because while there was evidence supporting two different factual conclusions—that either the defendant was responsible for inflicting the fatal shot or that his accomplice was responsible—it was exclusively the province of the jury to resolve the conflict, and a rational jury could have found that the defendant was responsible).

Because it is the exclusive province of the jury to resolve such a factual dispute, we cannot reweigh the evidence and substitute our judgment for that of the jury. *See id.* ¶ 28. We conclude that a rational jury could find beyond a reasonable doubt that Child's act of shooting at the truck caused Young's injuries and/or Escobar's death. We therefore affirm Child's conviction for shooting at a motor vehicle.

**Child's Statement to the Police**

Child argues that the trial court erred in failing to suppress his videotaped confession because he did not knowingly, voluntarily, and intelligently waive his constitutional right against self-incrimination. Child points to three things that he alleges prevented him from knowingly waiving his rights: intoxication, poor cognitive functioning, and vague threats that Child was to be the scapegoat in the shooting.

10

"The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Hand*, 2008-NMSC-014, ¶ 6, 143 N.M. 530, 178 P.3d 165 (internal quotation marks and citation omitted). Because a suppression ruling involves a mixed question of fact and law, we review the trial court's purely factual assessments to determine if they are supported by substantial evidence. *Id.* If the trial court's factual findings are supported by substantial evidence, we defer to those findings, indulging in all reasonable inferences that can be drawn from them. *Id.* While we defer to the trial court's determination of the facts, "the legal question of whether or not a valid waiver of Fifth Amendment rights has occurred is reviewed de novo." *State v. Lasner*, 2000-NMSC-038, ¶ 6, 129 N.M. 806, 14 P.3d 1282 (internal quotation marks and citation omitted).

In reviewing Defendant's argument that his statement should have been suppressed, we "must evaluate the totality of the circumstances, including the mental and physical condition, background, experience and conduct of the accused, as well as the conduct of the police, in determining whether the State has successfully carried its burden" of proving "by a preponderance of the evidence that the [d]efendant knowingly, intelligently, and voluntarily waived his rights against self-incrimination." *Id.* The test for determining whether a juvenile validly waived his rights is identical

11

to that applicable to an adult, although the specific factors we should consider have been codified in NMSA 1978, Section 32A-2-14(E) (2009) of the Children's Code. *Lasner*, 2008-NMSC-038, ¶¶ 6-7. However, these factors do not "establish a heightened protection for statements by juveniles." *State v. Martinez*, 1999-NMSC-018, ¶ 18, 127 N.M. 207, 979 P.2d 718.

Child argues that he is entitled to a rebuttable presumption that his statement was not knowingly, intelligently, or voluntarily given. We disagree. This presumption applies only to juveniles who are thirteen or fourteen years old—not to juveniles like Child who are over the age of fourteen. *See id.* (noting that Section 32A-2-14(F) makes all statements by juveniles under the age of thirteen inadmissible, creates a rebuttable presumption of inadmissibility for juveniles aged thirteen or fourteen, and provides a list of factors to be considered when evaluating statements made by juveniles over fourteen years of age). We thus apply the statutory factors to determine whether Child's confession was knowingly and voluntarily given.

Child's primary argument is that he was intoxicated at the time he gave his confession. After a hearing on the matter, the trial court concluded that there was no indication that Child was under the influence of alcohol such that he was either incompetent to give a statement or unable to knowingly, intelligently, and voluntarily

12

waive his Fifth Amendment rights. We review the trial court's conclusion for substantial evidence.

Detective Ferrari, the officer who arrested Child and transported him from his home to the police station and then later from the police station to the jail, testified that Child was not slurring his speech, did not stumble when he walked, did not smell of alcohol, and was attentive throughout the approximately thirty minutes that he spent with Child on the night of the interview. Detective Ferrari also testified that he had training and experience identifying intoxicated persons and that based on this training and experience, Child did not appear to be intoxicated.

Detective Charles, the detective who conducted the interview with Child, testified that Child did not slur his speech, did not stumble when he was walking, appeared to be attentive, answered the questions willingly, and appeared to understand what was happening to him. Detective Charles testified that he detected an odor of alcohol on Child but that based on his training and experience, Child did not appear to be intoxicated. Detective Charles also indicated that he did not have any concerns that Child was intoxicated but that if he had had any concerns, he would not have continued the interview.

Tracy Sutherland, the juvenile services director at the juvenile detention center, testified that Child was asked whether he was under the influence of alcohol or drugs

and that Child answered that he was not under the influence. Officer Rick Clark, an officer at the juvenile detention center where Child was held, testified that he was working the night that Child was brought in and that while Child was uncooperative, Child did not smell of alcohol, was not slurring his speech, was not stumbling when he walked, and did not appear to be intoxicated. Based on this testimony, we conclude that the trial court's finding that Child was not intoxicated at the time he gave his statement is supported by substantial evidence.

Aside from Child's alleged intoxication, the only other factors that Child points to in support of suppression are that he had poor cognitive functioning, that he was only seventeen years old, and that there were vague threats made against him to be the scapegoat. Child, however, does not direct us to anything in the record suggesting that he had poor cognitive functioning that would prevent him from understanding his rights or from being able to intelligently waive those rights. To the contrary, Child's mother testified at the suppression hearing that Child did "very good" in school—a statement that contradicts Child's unsupported assertion that he has impaired cognition.

While Child contends that he was subjected to "vague threats, acknowledged by Detective Charles, that [Child] was to be the scapegoat," he does not argue that he was threatened by Detective Charles in any way. During the interview, Detective

14

Charles reminded Child that at their last interview, he had told Child that he had "heard through the grapevine that everybody was trying to put you up to be the scapegoat" and that Child had said he was not present during the shooting. He then asked why Child was now admitting to being the shooter. Aside from this reference to what Detective Charles had "heard through the grapevine," Child has offered no evidence nor pointed to anything in the record supporting his assertion that he was threatened into making a confession.

Thus, because Child has failed to show that he has poor cognitive functioning, that he was threatened, or that he was intoxicated, we are left only with the question of whether a seventeen-year-old is able to knowingly and voluntarily waive his Fifth Amendment rights under the circumstances that existed at the time of Child's interview with the police.

Our Supreme Court considered a similar question in *Martinez*, 1999-NMSC-018, ¶¶ 9-25. In concluding that the seventeen-year-old defendant had validly waived his rights, the Court noted that the defendant was "old enough to comprehend *Miranda* warnings and the consequences of waiving his rights," appeared to be "'fairly intelligent' and able to understand the questions asked during the interview . . . [,] did not appear to be under the influence of alcohol or drugs[,] and . . . answered questions in a coherent and rational manner." *Id.* ¶ 22. The Court also noted that "the

15

interview was not particularly long, lasting only approximately one hour, and was conducted at a time of day, between 9:00 and 10:00 p.m., when officers could expect [the defendant] to be alert and cognizant of the significance of the interview." *Id.* Finally, the Court found it significant that when the defendant was read his *Miranda* rights and told that he could stop the interview at any time, he acknowledged understanding his rights and indicated that he had previously been advised of his rights. *Id.* The Court concluded that, under the totality of the circumstances, the defendant "fully understood the nature of his rights and the consequences of his waiver" and therefore knowingly and intelligently waived his right against self-incrimination. *Id.* ¶ 23.

Here, the facts surrounding Child's confession are even more compelling than those the Court found to constitute a valid waiver in *Martinez*. Like the defendant in *Martinez*, Child was seventeen years old at the time of the interview and was interviewed for less than one hour at approximately 9:00 p.m. Also like the defendant in *Martinez*, Child was able to rationally and clearly answer questions posed to him and, according to his mother, Child did well in school, an indication that he is a normally intelligent individual. As in *Martinez,* Child was not only read his rights prior to the interview, but also indicated that he remembered his rights from the last interview and that he therefore did not need to hear them a second time. Thus, the

circumstances surrounding Child's interview are nearly identical to the circumstances surrounding the interview of the defendant in *Martinez*. Even more compelling, however, is that in this case Child not only expressly waived his rights by signing a written waiver, but, as the trial court found, "when it got to a point where the interviewing was getting a little too focused and a little too close to where [Child] did not want it to go," Child "very ably and knowingly did invoke his right to silence and his right to counsel."

Because Child was a reasonably intelligent seventeen year old, was interviewed for a reasonable length of time at a reasonable time of day, was made aware of and expressly waived his Fifth Amendment rights, and because Child explicitly invoked his rights toward the end of the interview, we affirm the trial court's conclusion that Child's confession was knowingly, willingly, and voluntarily given and that the videotaped statement was admissible at trial.

**Amenability Hearing**

Following Child's conviction by jury, the trial court held an amenability hearing pursuant to NMSA 1978, Section 32A-2-20(A) (2009) to determine whether Child was amenable to treatment as a juvenile. Following the hearing, the court found that Child was not amenable to treatment in a juvenile facility and that he was therefore subject to adult sanctions. While Child did not object to the amenability

17

hearing or otherwise challenge the trial court's determination below, he argues for the first time on appeal that Section 32A-2-20(A) is unconstitutional. Specifically, Child argues that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), requires a jury, not the trial court, to make the determination that a defendant is or is not amenable to treatment as a juvenile. While Child's appeal was pending, we decided this very issue in *State v. Rudy B.*, 2009-NMCA-104, ¶ 53, 147 N.M. 45, 216 P.3d 810, *cert. granted*, 2009-NMCERT-009, ___ N.M. ___, ___ P.3d ___ (No. 31,909, Sept. 15, 2009), and held that Sections 32A-2-20(B) and (C) are facially unconstitutional and that *Apprendi* requires that the amenability determination be made by a jury. We also held that our ruling created a new rule and that it would "apply only to new cases and those that are on direct review where the *Apprendi* issue has been preserved for appeal." *Id.*

Our Supreme Court has previously explained that in order to properly preserve a claim for a new rule to apply, the issue must be "raised and preserved below." *Santillanes v. State*, 115 N.M. 215, 225, 849 P.2d 358, 368 (1993). Our Supreme Court has also indicated, however, that the retrospectivity of a new rule is irrelevant if the trial court committed fundamental error. *State v. Kirby*, 1996-NMSC-069, ¶ 4, 122 N.M. 609, 930 P.2d 144 (concurring with an unpublished Court of Appeals decision which held that "[s]ince the doctrine of fundamental error affords [the d]efendant the right of appeal," a new rule that was to be applied only prospectively

18

could "be made applicable to this case without applying its rule retrospectively" (internal quotation marks and citation omitted)). Thus, while Child was required to raise the *Apprendi* issue below in order to benefit from our holding in *Rudy B.*, relief could be available to Child if the trial court's failure to have a jury determine whether Child was amenable to treatment constituted fundamental error.

Despite recognizing that our review will be limited to fundamental error, Child does not make any argument that the constitutional defect in our juvenile sentencing system recognized in *Rudy B.* rises to the level of fundamental error. "Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). Because fundamental error is an exception to the general rule that error must be preserved below, the exception is to be applied "very guardedly" and "only under extraordinary circumstances to prevent the miscarriage of justice." *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citations omitted).

The mere fact that we have since found the statute Child challenges to be unconstitutional does not automatically make the fact that the trial court sentenced

Child pursuant to that statute rise to the level of fundamental error. *See State v. Sanchez*, 58 N.M. 77, 84, 265 P.2d 684, 688 (1954) (concluding that denial of a defendant's right to a fair and impartial jury does not automatically rise to the level of fundamental error). Child fails to demonstrate how the alleged constitutional defect rises to the level of fundamental error. We therefore need not address Child's argument that he was entitled to have a jury determine his amenability to treatment. *See State v. Clements*, 2009-NMCA-085, ¶ 18, 146 N.M. 745, 215 P.3d 54 (declining to address the defendant's argument that a new rule should be applied to his case because the issue was raised for the first time on appeal), *cert. denied*, 2009-NMCERT-007 ___ N.M. ___, ___ P.3d ___ (No. 31,722, July 30, 2009).

**Cruel and Unusual Punishment**

Child contends that his being sentenced to incarceration in an adult penitentiary constitutes cruel and unusual punishment, arguing that the trial court failed to take Child's life situation into account and that subjecting him to an adult sentence puts Child into a dangerous situation. While Child acknowledges that he failed to preserve this challenge below, he contends that "[a]n unconstitutional sentence is an illegal sentence that may be challenged for the first time on appeal."

Our Supreme Court recently decided that while a challenge to a sentence involving a jurisdictional question may be raised for the first time on appeal, a

20

challenge to a sentence involving a constitutional question must be preserved below before it can be raised on appeal. *State v. Chavarria*, 2009-NMSC-020 ¶ 14, 146 N.M. 251, 208 P.3d 896 (noting that "a sentence authorized by statute, but claimed to be cruel and unusual punishment under the state and federal constitutions, does not implicate the jurisdiction of the sentencing court and, therefore, may not be raised for the first time on appeal"). Because Child failed to preserve the claim of cruel and unusual punishment claim he raises on appeal, we do not address the merits of his argument.

**Ineffective Assistance of Counsel**

Finally, Child argues that his trial counsel was ineffective. In support of this argument, Child notes that: (1) his trial counsel did not object to (a) his being convicted of shooting at a motor vehicle resulting in harm to an individual not named in the information, (b) the prosecutor's reference to Child as an "unrepentant murderer," (c) the testimony of Child's mother; and that (2) trial counsel did not argue that Child's amenability to treatment should have been submitted to a jury. In addition, Child contends that his trial counsel failed to introduce evidence during the suppression hearing regarding Child's cognitive impairment stemming from discovering his father's suicide and that trial counsel failed to request a jury

instruction to the effect that it was the jury's duty to determine whether Child's confession was voluntary.[1]

We undertake de novo review of claims of ineffective assistance of counsel and apply a two-prong test that "places the burden on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *State v. Dylan J.*, 2009-NMCA-027, ¶¶ 33, 35-37, 145 N.M. 719, 204 P.3d 44. While Child points to a number of perceived errors that allegedly demonstrate the deficiency of his trial counsel, Child does not argue that any of these perceived errors prejudiced his defense. The closest Child comes to arguing prejudice is his assertion that the jury was prevented from considering whether his confession was voluntary. The alleged threats that Child contends made his confession involuntary, however, were external threats from his accomplices, not the types of official threats that would make his confession involuntary. *See State v. Munoz*, 1998-NMSC-048, ¶ 21, 126 N.M. 535, 972 P.2d 847 (noting that voluntariness means "freedom from official coercion" and that for a confession to be involuntary, there must be an essential link between coercive activity of the state and the confession of the defendant (internal

---

[1]In his reply brief, Child urges us also to consider his trial counsel's failure to preserve the challenge he raises regarding the jury instructions as part of his ineffective assistance of counsel claim. However, we do not review arguments made for the first time in a reply brief and therefore do not consider this alleged error. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65.

22

quotation marks and citation omitted)).  Because Child has failed to demonstrate a prima facie case for ineffective assistance of counsel, we do not address the merits of Child's claim.

As Child acknowledges, a habeas proceeding is the preferred method to address a claim of ineffective assistance of counsel when the record on appeal does not establish a prima facie case.  *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31.  Our conclusion that Child has failed to meet his burden of demonstrating a prima facie case of ineffective assistance of counsel in no way impairs Child's ability to later bring such a claim in a habeas proceeding if there appears to be a factual basis.  *See State v. Saiz*, 2008-NMSC-048, ¶ 65, 144 N.M. 663, 191 P.3d 521 (noting that a defendant "may pursue habeas corpus proceedings on [the ineffective assistance of counsel] issue . . . if he is ever able to provide evidence to support his claims"), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783.

**CONCLUSION**

For the foregoing reasons, we affirm Child's convictions and the sentence imposed by the trial court.

**I T IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**ROBERT E. ROBLES, Judge**