794 P.2d 728

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Janet Elaine VIGIL,
Defendant–Appellant.**

No. 18869.

Supreme Court of New Mexico.

June 28, 1990.

Phillip A. Martinez, Albuquerque, for defendant-appellant.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

RANSOM, Justice.

Janet Elaine Vigil appeals her conviction of first-degree murder in the death of her husband. She argues (1) there was not substantial evidence of premeditation and deliberation to support the jury's verdict. She also argues: (2) SCRA 1986, 14–5171, the Uniform Jury Instruction on justifiable homicide and self-defense, was inadequate to present her battered woman theory of self-defense; (3) SCRA 1986, 14–6008 (Duty to consult) unconstitutionally shifted the burden of proof of not guilty to defendant; (4) defense counsel's failure to present an expert witness on a battered woman defense constituted ineffective assistance of counsel; and (5) the court erred in admitting evidence of a prior extrajudicial statement recanted by the declarant at trial. We affirm.

*Substantial evidence supported the jury's guilty verdict.* In reviewing the sufficiency of the evidence to establish that defendant acted with deliberate intent, we inquire whether substantial evidence, either direct or circumstantial in nature, exists to support a verdict of guilty beyond a reasonable doubt. *See State v. Duran,* 107 N.M. 603, 762 P.2d 890 (1988); *State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988). "Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Sparks,* 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App.1985).

Defendant testified that, while getting ready for work on the morning of the day on which she later had the fatal confrontation with her husband, she discovered her husband had been sexually molesting her daughter by a prior marriage. Upon reaching her office, defendant requested permission to leave work before the noon hour because she had a "family problem" and needed to go home.

Defendant testified she went home at lunch to talk to her husband about his actions and to ask him to get psychological help. She said she had no fear of violence but thought she "could go home and sit down and talk to Steve and discuss the problem with him, like we had many times before." Defendant said she was lying on the bed crying when her husband arrived home. They had an argument. He hit her in the face, punched her in the stomach, kicked her, and knocked her to the floor. Taking a gun from under the bed in order to keep it away from her husband, she jumped over the bed and ran down the hall.

Mr. Vigil cut her off and got to the dining room before her. She testified she was frightened because she saw "that look" in her husband's eye indicating the onset of an episode of physical abuse. She pointed the gun at him and told him to stay away. He grabbed her hands and, during the ensuing struggle, the gun went off by accident.

Relying upon *State v. Easterwood,* 68 N.M. 464, 362 P.2d 997 (1961), and *State v. Hermosillo,* 88 N.M. 424, 540 P.2d 1313 (Ct.App.1975), defendant argues that, when the only evidence of the crime is circumstantial, it must be incompatible with the innocence of the accused upon any rational theory and incapable of explanation upon any reasonable hypothesis of defendant's innocence. Defendant argues that the most rational explanation of her behavior at the time she killed her husband is that she had gone home simply to confront him with a misdeed and ask him to get psychological help and that the killing was accidental or done in self-defense.

The standard of review, however, requires us to consider the evidence and all reasonable inferences therefrom in support of the verdict and not the merit of evidence that may have supported a verdict to the contrary. *See Duran,* 107 N.M. at 605, 762 P.2d at 892; *Sutphin,* 107 N.M. at 130–31, 753 P.2d at 1318–19. We note that the rule from *Easterwood* "is really nothing more than an application of the substantial evidence rule." *Hermosillo,* 88 N.M. at 426, 540 P.2d at 1315. Indeed, contrary to defendant's assertion, *Easterwood* requires only that circumstantial evidence *relied upon* to support the verdict be incompatible with any rational theory of defendant's innocence, i.e., that the evidence supporting the verdict provide a sufficient basis upon which to infer guilt beyond a reasonable doubt. 68 N.M. at 466, 362 P.2d at 997–98; *see also Hermosillo,* 88 N.M. at 426, 540 P.2d at 1315 (circumstantial evidence relied upon to establish guilt must be incompatible with any rational theory of the innocence of the accused).

The evidence specifically relied upon by the state as being sufficient to uphold the verdict is as follows: The shooting occurred at approximately 11:35 in the morning. Defendant left work at or about 11:00, and her husband left his work about fifteen minutes later. Various tests indicated he barely would have had time to reach home when the shooting occurred. All of the witnesses who arrived on the scene immediately after the shooting testified that defendant showed no signs of injuries or a struggle. She was described as neatly dressed, her hair "almost perfect." The detective who transported her to the detention center said he saw no marks or abrasions on defendant's face or hands. A neighbor, the first to arrive at the scene, testified that defendant "looked very nice" and did not have any visible injuries.

Neighbors and officers testified that the Vigils' home was in good order and there was no indication that a struggle had taken place. (Defendant did testify at trial that she had straightened up the bed while she was waiting for the ambulance to arrive.) According to an investigating officer, defendant did not mention the fight in the bedroom when he questioned her. Rather, she stated that she went to the bedroom to get the gun after the argument began and came back into the living room and dining room area.

There was also evidence that, in order to fire the gun, the hammer would have to be pulled back manually, and there was no damage to the gun that might indicate a blow to the hammer had caused it to discharge. An expert testified that the muzzle of the gun was more than two feet but less than seven feet from Mr. Vigil at the time he was shot.

We conclude this constituted substantial evidence of the offense charged. This evidence would support a finding that no struggle took place between the time of Mr. Vigil's arrival home and his death, that the gun was intentionally rather than accidentally discharged, that defendant was motivated to kill by the fact that her daughter had been molested, and that defendant had acted deliberately rather than in the heat of passion or out of fear for her

life or her physical safety. In short, it is sufficient to establish the prosecution's version of the events leading up to Mr. Vigil's death rather than that of defendant.

█ *Trial court did not abuse its discretion in failing to give requested jury instructions—On self-defense.* The jury was instructed that evidence had been presented to show defendant killed her husband while defending herself, and that a killing was in self-defense if there was an appearance of immediate danger of death or great bodily harm to the defendant, if she were in fact put in fear by the apparent danger of immediate death or great bodily harm, and if she killed her husband because of that fear. *See* SCRA 1986, 14-5171.

Defendant argues that the self-defense instruction given to the jury was inadequate for them to understand that they were to place themselves in her shoes and evaluate the reasonableness of her actions from her point of view. *See State v. Gallegos,* 104 N.M. 247, 252, 719 P.2d 1268, 1273 (Ct.App.1986), *cert. quashed; State v. Allery,* 101 Wash.2d 591, 593–95, 682 P.2d 312, 314–15 (1984). Defendant requested that the court instruct the jury that it should consider her state of mind and should consider her past and present knowledge of Mr. Vigil, their relative size and strength, and the history of their relationship in a subjective manner.

When we consider the jury instructions as a whole, we conclude the instructions given adequately explained the law to be applied in this case and that, consequently, the trial court did not err in refusing to give the instruction requested. *See State v. Ramirez,* 79 N.M. 475, 444 P.2d 986 (1968). We agree with the trial court that the standard instruction did not preclude defendant from arguing nor the jury from considering past history as relevant to present perceptions and fear. In this regard we note the extensive testimony concerning previous episodes of physical abuse and defendant's statement that she was frightened because she saw "that look" in her husband's eyes.

For similar reasons we conclude, assuming that the requested instruction also was relevant to the elements of premeditation and deliberation as argued by defendant, the standard instructions given were adequate.

█ *—On duty to consult.* Under UJI 14-6008, the jury was instructed that, "In order to return a verdict, it is necessary that each juror agrees. Your verdict must be unanimous." Defendant contends the court erred in refusing her tendered instruction that, "if one or more of you are not persuaded beyond a reasonable doubt that the defendant is guilty of the offense charged then it is the duty of the jury as a whole to find the defendant not guilty." Defendant argues that the standard instruction misled jurors to believe that they had to be unanimously in favor of acquittal on the first-degree murder charge before they could move on to consider lesser charges. She contends this placed upon her the burden of proving she was not guilty of the crime of first-degree murder.

The effect of defendant's instruction, however, would be that, when the jury is instructed on various degrees of homicide, there could never be a hung jury on any but the least degree. That is not the law. *See State v. Castrillo,* 90 N.M. 608, 611, 566 P.2d 1146, 1149 (1977) (jury is to consider included charges in descending order from the greater offenses to the lesser, and, if the jury unanimously votes to acquit or cannot reach agreement on a greater offense, it must then move on to the lesser offenses, provided that either an acquittal or conviction on a lesser offense bars further prosecution for the greater offenses), *overruled on other grounds, State v. Wardlow,* 95 N.M. 585, 624 P.2d 527 (1981). The law is properly stated in UJI 14-250, as the jury was instructed in this case:

> You have been instructed on [various degrees of homicide]. You must consider each of these crimes. You should be sure that you fully understand the elements of each crime before you deliberate further.
>
> You will then discuss and decide whether the defendant is guilty of mur-

der in the first degree. If you unanimously agree that the defendant is guilty of murder in the first degree, you will return a verdict of guilty of murder in the first degree. If you do not agree, you should discuss the reasons why there is a disagreement.

If, after reasonable deliberation, you do not agree that the defendant is guilty of murder in the first degree you should move to a discussion of murder in the second degree.

■ *Failure of trial counsel to call expert witness did not result in ineffective assistance of counsel.* Defendant argues that there was no reasonable basis for trial counsel not to call an expert witness on the battered woman defense. At oral argument counsel for defendant on appeal devoted substantially all of the time available to him in arguing that a jury should not be expected to understand the state of mind of a battered woman under the circumstances and evidence presented in this case. Defendant relies primarily on the recent case of *Commonwealth v. Stonehouse,* 521 Pa. 41, 555 A.2d 772 (1989). In that case a majority of the Pennsylvania Supreme Court held that failure to call such a witness constituted ineffective assistance of counsel in light of the facts that the defense was entirely based on a theory of self-defense and that the prosecution built its case on erroneous myths concerning battered women. *Id.* at 65, 555 A.2d at 784–85.

We do not doubt that the testimony of persons with appropriate education, training, and experience may be necessary to dispel common misconceptions that a jury might be expected to harbor regarding battered women. *Accord Stonehouse,* 521 Pa. at 61–62, 555 A.2d at 782–83. Certainly, it cannot be assumed that conduct associated with post-traumatic stress disorder is a subject of common experience or understanding. However, in preparing Mrs. Vigil's defense, trial counsel well may have deemed using expert testimony to establish that the killing was the result of a post-traumatic stress disorder to be inconsistent with the claim of an accidental discharge of the gun. Trial counsel is an experienced criminal defense lawyer, and we take judicial notice of the fact that he has utilized expert testimony in an earlier battered woman defense of a wife accused of killing her husband.

Finally, although making several attempts to cast doubt on defendant's testimony concerning previous abuse, the prosecutor here, unlike the prosecutor in *Stonehouse,* did not build the state's case on "myths" concerning the victims of domestic violence. Rather, the state's case was built largely on the theory that there never was a struggle during which the gun went off by accident or during which defendant killed her husband out of fear for her life or safety. We will not substitute our own judgment over trial tactics for the judgment of defense counsel when it is not clear that the defendant was deprived of a meritorious defense because the judgment of defense counsel was without excuse or justification.

■ *Admission of evidence of recanted testimony was not error.* Defendant appeals as error the admission into evidence of the prior statement of a witness concerning a purported admission by defendant that, "I didn't mean to shoot him, but I got tired of him messing with my daughter, and so I blew his shit away." At trial, under oath, the witness refused to attribute such a statement to the defendant. Clearly, the statement attributed to defendant is itself an admission and is not hearsay. *See* SCRA 1986, 11–801(D)(2). That is not the point being raised. Defendant claims that it is the evidence of the extrajudicial statement of the witness (concerning the admission) that constituted hearsay. Rule 11–801(D)(1)(a), however, specifically provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is inconsistent with the testimony of the declarant at trial.

In addition to the witness's recantation at trial, there was substantial evidence discounting the possibility that defendant could have made the purported admission when and where attributed to her, or that

the witness could have overheard such a statement when and where she claimed to have heard it. While this evidence affects the credibility of the declarant's prior statement attributing the admission to defendant, this evidence does not render that statement inadmissible under Rule 11–801(D)(1)(a). Further, although the trial court might have refused to admit the prior statement under Rule 11–403, we cannot say as a matter of law that any unfair prejudice to defendant resulting from admission of the statement substantially outweighed its probative value. *See State v. Davis,* 97 N.M. 130, 637 P.2d 561 (1981) (admission of prior inconsistent statement rests within sound discretion of the trial court).

Finally, the defendant asks whether the accumulation of errors in her trial operated to deny her a fair trial. Having found no error as specified, we decline to hold that she was denied a fair trial.

The judgment and the sentence of the trial court is affirmed.

IT IS SO ORDERED.

BACA and WILSON, JJ., concur.