908 P.2d 231

STATE of New Mexico,
Plaintiff–Appellee,

v.

David Marshall WOODWARD,
Defendant–Appellant.

No. 20477.

Supreme Court of New Mexico.

Nov. 8, 1995.

Tom Udall, Attorney General, Patricia A. Gandert, Assistant Attorney General, Santa Fe, for Appellee.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

FROST, Justice.

1. Defendant David Marshall Woodward (David) appeals his convictions on charges of first-degree murder, aggravated burglary, and battery. David raises numerous issues regarding evidentiary rulings, sufficiency of the evidence, denial of mistrial, and cumulative error, which he contends mandate a reversal or new trial. We find no merit to any of David's arguments and affirm.

## I. FACTS

2. Viewed "in the light most favorable to supporting the verdict," *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993), the evidence adduced at trial is as follows. On the morning of March 28, 1990, a neighbor discovered the body of Deborah Woodward (Debbie), David's wife, submerged in her bathtub. Although initial responding law enforcement officers believed the death resulted from accidental drowning or suicide, the autopsy revealed that Debbie died from drowning as a result of acute ether intoxication. After receipt of preliminary autopsy results, police officers returned to the scene later that day to investigate a probable homicide.

3. David and Debbie had had marital difficulties, and Debbie had filed for divorce in January 1990. After that, David moved in with his mother, and Debbie and their children continued to reside at their house. Under the divorce court's orders, David had visitation with their children every other weekend, during which he and the children stayed at the house and Debbie stayed elsewhere, such as with her parents. Between the weekend visits, David periodically spent time with the children at his mother's house.

4. The State introduced evidence that, episodically during their marriage, David had abused his wife, Debbie had had extramarital relationships, and David was aware of and upset about these relationships. In addition, David admitted to tape recording his wife's conversations. Several witnesses testified that David had threatened various people in connection with the pending divorce and subsequent murder trial. A jailhouse informant also gave a statement to police, which statement he later recanted, that David had confessed to his wife's murder.

5. The defense relied on an alibi as to David's whereabouts at the time of the murder. However, the State introduced contrary

evidence, and the time of death was indeterminate. Overall, many facts were highly contested, and during the fifteen-day trial the jury was presented with multiple versions of the events surrounding and the cause of Debbie's death. After the jury returned verdicts of guilty on all charges submitted, the district court sentenced David to consecutive sentences of life imprisonment for first-degree murder, nine years for aggravated burglary, and six months for battery, for a total period of life plus nine and one-half years. David filed a timely notice of appeal pursuant to SCRA 1986, 12–102(A)(2), 12–202(A) (Repl.Pamp.1992).

## II. EVIDENTIARY ISSUES

■■■ 6. The standard of review for evidentiary issues is well established.

On review we defer to the trial judge's decision to admit or exclude evidence and we will not reverse absent a clear abuse of discretion. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason.

State v. Apodaca, 118 N.M. 762, 770, 887 P.2d 756, 764 (1994) (citations omitted) (quotations omitted).

A. Admissibility of Testimony of Zelda Maggart and Benjamin M. Butler

■ 7. David's first contention is that the trial court improperly admitted the testimony of Zelda Maggart (Zelda) and Benjamin M. Butler (Butler) concerning events on January 8, 1990. Zelda, Debbie's mother, and Butler, the next-door neighbor of Debbie's parents, testified concerning hearsay statements Debbie made that evening. After David arrived unexpectedly at Debbie's parents' house, David fought with Debbie's father and physically removed Debbie's and his sons. In the meantime, Debbie ran out her parents' back door and into Butler's house.

8. Debbie then threw herself on Butler's sofa, curled into a fetal position sobbing, and exclaimed, "He [David] is going to kill me." Debbie also stated that she would probably never see her boys again. The trial court admitted this testimony under the excited utterance exception to the hearsay rule, which provides: "The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:.... A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." SCRA 1986, 11–803(B).

9. In State v. Maestas, 92 N.M. 135, 139–41, 584 P.2d 182, 186–88 (Ct.App.1978), the Court of Appeals considered the scope of the excited utterance exception. The victim in Maestas was severely beaten. At trial she could not or would not identify her assailant. Id. at 142, 584 P.2d at 189. The issue was whether the victim's out-of-court statements identifying the defendant as her assailant were admissible. The Court of Appeals held admissible the victim's statements made to her mother shortly after the beating while the victim was still under the stress of excitement from the beating. However, the Court held inadmissible the victim's statements to her sister-in-law later that evening and her sister the next morning. Id. at 141, 584 P.2d at 188.

10. The Court noted that New Mexico follows the Wigmore test for the admissibility of excited utterances.

First. "There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting."

Second. "The utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance."

Third. "The utterance must relate to the circumstances of the occurrence preceding it."

Id. (quoting State v. Buck, 33 N.M. 334, 336–37, 266 P. 917, 918 (1927)). The Court also noted that, under this test, "[t]here is no definite or fixed limit of time." Id. at 140, 584 P.2d at 187. Rather, "each case must depend upon its own circumstances." Id.

11. In this case, the witnesses testified that Debbie was still sobbing and lying in a fetal position when she made the contested statements. There was ample evidence from which the trial court could conclude that Debbie was then experiencing shock resulting from David's intrusion into her parents' house, and that Debbie made the statements under the stress of and relating to this shocking circumstance. The trial court did not abuse its discretion in admitting Debbie's hearsay statements through the testimony of Zelda and Butler.

### B. Admissibility of Testimony of Stephen B. Maggart

12. David's next contention is that the trial court improperly admitted the testimony of Stephen B. Maggart (Steve), Debbie's brother, concerning Debbie's hearsay statements that David had hit her. There were two statements concerning different incidents, which we discuss in inverse chronological order.

### 1. *The First Incident*

13. Steve testified regarding an incident in October or November 1989, when he visited Debbie at her house. When he arrived she was crying and had a small, bloody cut in the corner of her right eye. She told her brother that David had hit her. The trial court admitted this statement under the excited utterance exception to the hearsay rule.

14. There was sufficient evidence to support a conclusion that Debbie was experiencing shock resulting from David's violent behavior, and that Debbie made the statement under the stress of and relating to this shocking circumstance. The trial court considered Steve's testimony in a proffer outside the presence of the jury and did not abuse its discretion in admitting Debbie's hearsay statement under the excited utterance exception.

### 2. *The Second Incident*

15. Steve also testified that, shortly before the other incident, he and Debbie were visiting their father in the hospital when he noticed that her faced was flushed and bruised. Steve then volunteered that Debbie said David had hit her. The court interrupted Steve, and defense counsel requested a sidebar at which he asked the State to caution Steve about hearsay. Defense counsel did not ask the court to strike Steve's statement or to give a limiting instruction. Consequently, David waived his objection to this statement. *See State v. Sandoval,* 88 N.M. 267, 268, 539 P.2d 1029, 1030 (Ct.App.1975) (holding that defendant did not preserve error when, after court sustained defense counsel's objection on grounds of relevancy, defense counsel failed to request that court strike testimony or give curative instruction).

16. In effect, defense counsel asked the court and the State not to let in any more inadmissible hearsay. Defense counsel got the relief he requested, because later, when Steve began to relate additional inadmissible hearsay, the court struck it. Moreover, even if David had preserved his objection that this testimony was erroneously admitted, its admission would be harmless because the evidence was cumulative, *see Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 733–34, 779 P.2d 99, 110–11 (1989), since the trial court properly admitted Steve's testimony regarding the first incident.

### 3. *Both Incidents*

17. David argues that evidence of both incidents is impermissible evidence of bad character under SCRA 1986, 11–404(A). Character evidence is generally inadmissible to prove action in conformity with such character, SCRA 11–404(A), but such evidence may be admissible for other purposes, SCRA 11–404(B). As discussed below in connection with Richard Kelley's testimony, David's behavior toward his wife and others with regard to his marriage and his wife's murder was probative evidence of motive, intent, plan, or knowledge. Indeed, such evidence was important to establish the requisite mental state for first-degree murder. *See Hernandez,* 115 N.M. at 19, 846 P.2d at 325.

18. Lastly, David argues that the statements' prejudicial impact substantially outweighed their probative value such that the

**6**

trial court should have excluded them under SCRA 1986, 11–403. The purpose of SCRA 11–403 is not to guard against the danger of any prejudice whatever, but only against the danger of *unfair* prejudice. A statement is not unfairly prejudicial simply because it inculpates the defendant. 1 Kenneth S. Broun et al., *McCormick on Evidence* § 185, at 780 (John W. Strong ed., 4th ed. 1992) ("[P]rejudice does not simply mean damage to the opponent's cause.").

19. Because a determination of unfair prejudice is fact sensitive, "much leeway is given trial judges who must fairly weigh probative value against probable dangers." *Id.* at 783 (footnotes omitted). *See State v. Chamberlain,* 112 N.M. 723, 726–27, 819 P.2d 673, 676–77 (1991) (affirming admission of tape recording of fatally injured police officer's moans). The trial court in this case carefully weighed these factors and did not abuse its discretion in admitting Steve's testimony.

C. Admissibility of Testimony of Kevin M. Patterson

20. David next contends that the trial court improperly admitted the testimony of Kevin M. Patterson (Patterson) explaining the significance of a poem written in a card he sent to Debbie shortly before her death. Patterson and Debbie dated during the days preceding Debbie's death. David introduced the card into evidence; the State then proffered Patterson's testimony for explanation. The poem contained references to David's spying on Debbie and to Debbie's fear of David, upon which Patterson elaborated.

21. Patterson's testimony was not hearsay. " 'Hearsay' is [an out-of-court] statement ... offered in evidence to prove the truth of the matter asserted." SCRA 1986, 11–801(C). The State introduced Debbie's out-of-court statements for the limited purpose of explaining what Patterson wrote in the card. Her statements were not admitted to prove that David spied on Debbie or that she was afraid of him, and the court so cautioned the jury. *See State v. Litteral,* 110 N.M. 138, 141, 793 P.2d 268, 271 (1990) ("Evidence inadmissible for one purpose may be admissible for other purposes under a differ-

ent rule of evidence."); *see also State v. Gonzales,* 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992) ("The jury is presumed to follow the court's [limiting] instructions.").

22. David wanted the card admitted into evidence, but, without explanation, the card could have confused and misled the jury. The State offered Patterson's testimony to explain the contents of the card. *See State v. Sacoman,* 107 N.M. 588, 594, 762 P.2d 250, 256 (1988) ("It is proper for the State to correct a false impression generated by the defendant."). The trial court did not abuse its discretion in admitting this testimony for this purpose.

D. Admissibility of Testimony of Carl S. Miskowicz

23. David next objects to the admission of the testimony of Carl S. Miskowicz (Miskowicz). Miskowicz shared a cell with David after David was arrested and before he was released on bail. Miskowicz made a statement to police that David had confessed to Debbie's murder while incarcerated. Later, Miskowicz recanted his statement. The court granted immunity to Miskowicz and ordered him to testify. At trial, he continued to maintain that David had not confessed. The prosecution then introduced Miskowicz's prior police statement to impeach his testimony at trial.

24. At the onset, we note that the State properly introduced Miskowicz's prior statement for the limited purpose of impeaching his trial testimony. *See* SCRA 1986, 11–613. Because defense counsel did not request a limiting instruction that the jury could not consider the prior statement for the truth of the matters it contained, David waived any argument that the jury improperly considered it as substantive evidence of David's guilt. *See DeMatteo v. Simon,* 112 N.M. 112, 114, 812 P.2d 361, 363 (Ct.App.1991) (holding that defendants waived any error by failing to request limiting instruction regarding evidence admissible for one purpose but not another).

25. However, even assuming that David preserved his objection to the admission of Miskowicz's prior statement as

substantive evidence, his objection fails because the trial court properly admitted both Miskowicz's testimony and his earlier statement. The evidence contains two analytical components: the purported confession made by David to Miskowicz, and Miskowicz's prior statement contradicting his trial testimony. Neither is hearsay. David's confession is an admission by a party-opponent under SCRA 1986, 11–801(D)(2) ("A statement is not hearsay if: ... The statement is offered against a party and is ... his own statement...."). Likewise, Miskowicz's prior inconsistent statement was not hearsay under the rule in effect at the trial's commencement, SCRA 1986, 11–801(D)(1) ("A statement is not hearsay if: ... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... inconsistent with his testimony....").[1]

26. *State v. Vigil*, 110 N.M. 254, 794 P.2d 728 (1990), is dispositive of this case. The defendant in *Vigil* resisted introduction of a witness's prior statement concerning a purported admission by the defendant. *Id.* at 258, 794 P.2d at 732. At trial, the witness recanted. The Court held that the prior statement was admissible under SCRA 11–801(D)(1), (2). *Id.* In addition, the Court noted that although there was substantial evidence undermining the witness's credibility, this went to the weight and not to the admissibility of the evidence. *Id.* at 258–59, 794 P.2d at 732–33; *see also State v. Williams*, 117 N.M. 551, 561, 874 P.2d 12, 22 (1994) (finding the credibility of the witness, who is subject to cross-examination, irrelevant to a determination of admissibility).

27. Similarly, in this case there was substantial evidence undermining Miskowicz's credibility. However, his veracity was for the jury to determine. *See id.* Miskowicz's testimony and prior statement were admissible nonhearsay. The trial court did not abuse its discretion in admitting Miskowicz's testimony and prior statement.

E. Admissibility of Testimony of Richard B. Kelley

28. David next contends that the trial court improperly admitted the testimony of Richard B. Kelley (Kelley). Kelley testified that before Debbie's murder David had solicited his assistance in planning the murder of Debbie's female friend, who David believed was responsible for the deterioration of his marriage. David argues that this testimony was inadmissible collateral evidence of a prior bad act unrelated to the offenses charged.

29. The evidentiary rule regarding prior bad acts reads:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

SCRA 1986, 11–404(B). *See also State v. McGhee*, 103 N.M. 100, 104, 703 P.2d 877, 881 (1985) (holding that evidence of prior bad acts is admissible "if it is probative of a material element at issue"); *State v. Niewiadowski*, 120 N.M. 361, 363–64, 901 P.2d 779, 781–82 (Ct.App.), *cert. denied*, 120 N.M. 184, 899 P.2d 1138 (1995) (holding that "evidence of Defendant's other bad acts can be admissible if it bears on a matter in issue, such as intent, in a way that does not merely show propensity"). In *Williams*, we noted that "[i]f evidence of prior acts is relevant and admissible for a purpose other than proving a defendant's propensity to commit a crime, the probative value of the evidence must outweigh its prejudicial effect." 117 N.M. at 557, 874 P.2d at 18.

30. The record indicates that the trial court carefully weighed Kelley's testimony during a proffer outside the presence of the jury. The court admitted the evidence as relevant to and probative of David's motive—the State was trying to show that David was obsessed with preserving his marriage and controlling Debbie, at all costs. As discussed above in connection with Steve's testimony, evidence of motive, intent, plan, or knowledge was relevant to the requisite mental

---

1. SCRA 1986, 11–801(D)(1) has since been amended (effective January 1, 1995).

state for first-degree murder. *See Hernandez*, 115 N.M. at 19, 846 P.2d at 325.

31. After Kelley testified before the jury, the trial court gave a limiting instruction that the jury could consider his testimony only to determine a motive for Debbie's murder. *See Gonzales*, 113 N.M. at 230, 824 P.2d at 1032 ("The jury is presumed to follow the court's [limiting] instructions."). Furthermore, the trial court excluded Kelley's testimony regarding two other incidents involving David, after weighing their probative value against their prejudicial effect. The trial court did not abuse its discretion in admitting portions of Kelley's testimony as evidence of motive.

## F. Admissibility of Testimony of Dr. Glen A. Chaffee

32. Dr. Glen A. Chaffee (Chaffee), a psychologist, treated David and Debbie for the seven months preceding Debbie's death. David objected to the admission of Chaffee's testimony recounting statements made by Debbie during psychological treatment. Debbie stated that David had made threats to kill her and others and that David had abused and spied on her.

### 1. *Medical Diagnosis or Treatment Exception*

33. The medical diagnosis or treatment exception to the hearsay rule provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> **D. Statements for purposes of medical diagnosis or treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

SCRA 1986, 11–803(D).

34. After the proffer, the trial court carefully questioned Chaffee to determine that Debbie's statements regarding David were necessary to Chaffee's treatment of Debbie

for situational depression. The court also inquired into the possibility of fabrication to determine the reliability of Debbie's declarations. Then the court ruled to admit the testimony, but limited it to evidence of abuse, threats, and spying.

35. In *State v. Altgilbers*, 109 N.M. 453, 786 P.2d 680 (Ct.App.1989), *cert. denied*, 109 N.M. 419, 785 P.2d 1038 (1990), the Court of Appeals considered the medical diagnosis or treatment exception to the hearsay rule. The defendant in *Altgilbers* was charged with sexually abusing two of his daughters. The Court upheld the trial court's admission under this exception of the girls' statements to a pediatrician and a psychologist identifying the defendant as the abuser. *Id.* at 457, 786 P.2d at 684. The Court noted that "[i]n dealing with child sexual abuse ... disclosure of the perpetrator may be essential to diagnosis and treatment." *Id.* at 459, 786 P.2d at 686.

36. Similarly, Chaffee testified that, in cases such as this that involve spousal abuse, disclosure of the perpetrator is essential to diagnosis and treatment of situational depression. Debbie's statements to Chaffee fall under SCRA 11–803(D), because Debbie made the statements for the purpose of obtaining medical treatment, and because Chaffee reasonably relied on these statements in diagnosing and treating Debbie.

### 2. *Confrontation Clause*

37. Unlike this case, the declarants in *Altgilbers* were subject to cross-examination regarding their allegations against the defendant. 109 N.M. at 460–62, 786 P.2d at 687–89. Debbie could not be cross-examined because she was dead. Consequently, *Altgilbers* does not dispose of David's claim that Chaffee's testimony deprived him of his constitutional right of confrontation. *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14.

38. In *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), the United States Supreme Court established a two-part Confrontation Clause test for hearsay evidence. First, the declarant must be unavailable. *Id.* at 65, 100 S.Ct. at 2538–39. Availability is not an issue in

this case. Second, the statement must have sufficient "indicia of reliability." *Id.* at 65–66, 100 S.Ct. at 2539. Noting that the traditional hearsay rules and the Confrontation Clause serve similar purposes, the Court concluded that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539.

39. In *White v. Illinois,* 502 U.S. 346, 355 n. 8, 112 S.Ct. 736, 743 n. 8, 116 L.Ed.2d 848 (1992), the United States Supreme Court held that the medical diagnosis or treatment exception is a "firmly rooted hearsay exception" for purposes of *Roberts'* second element. Because we have held that Chaffee's testimony was properly admitted under this exception, David's constitutional right of confrontation was not violated.

3. *The "David Is Going to Kill Me" Statement*

40. David next challenges the admission of a particular statement by Chaffee regarding a session he had with Debbie on January 10, 1990. During the proffer, Chaffee stated that on this date Debbie was afraid that David would hurt her and take the children. During his testimony before the jury, Chaffee stated that Debbie said, "David is going to kill me."

41. The defense immediately objected and moved for a mistrial. The trial court denied the motion for mistrial and did not strike the testimony or instruct the jury about it. In his briefs, David argues that the trial court erred by not declaring a mistrial or by not striking this testimony, on the grounds that it differed substantially from the proffer. Although we conclude that the "David is going to kill me" statement was inadmissible, we also conclude that its admission was harmless error.

42. *United States v. Joe,* 8 F.3d 1488 (10th Cir.1993), *cert. denied,* 510 U.S. 1184, 114 S.Ct. 1236 (1994), 127 L.Ed.2d 579, is a decision of the Tenth Circuit, originating from the District of New Mexico, with facts remarkably similar to the facts of this case. We find the rationale of *Joe* persuasive. The defendant in *Joe* was convicted of murdering his estranged wife. Eight days before her murder, the victim had seen a physician who treated her for rape. During treatment, she identified the defendant as the rapist. She also told the physician that she was afraid because the defendant had threatened to kill her. *Id.* at 1491.

43. The court of appeals affirmed the trial court's admission of the statement identifying the defendant as the rapist. The court noted that "the identity of the abuser is reasonably pertinent to treatment in virtually every domestic sexual assault case." *Id.* at 1494. Likewise, in this case, Chaffee testified that when situational depression stems from spousal abuse disclosure of the perpetrator is essential to diagnosis and treatment. As we concluded above, the trial court properly admitted Chaffee's testimony regarding David's abusive behavior towards Debbie.

44. The court in *Joe* then considered the victim's statement that she was afraid of the defendant because he had threatened to kill her. The court held that the first part of the statement, that she was afraid, was admissible as a statement of then-existing mental, emotional, or physical condition. *Id.* at 1492. *See* SCRA 1986, 11–803(C). However, the court held that the statement that the defendant would kill her was a prohibited "statement of memory or belief," *Joe,* 8 F.3d at 1493, that was inadmissible under any hearsay exception, *id.* at 1497.

45. In this case, Chaffee testified that Debbie stated that David was going to kill her. He testified that she was calm when she said it, so it was not an excited utterance. Likewise, this was not a present sense impression or a statement of then-existing mental, emotional, or physical condition. It was a "statement of memory or belief" and, as such, was inadmissible.

46. However, not all erroneously admitted evidence necessitates reversal. We must next determine whether the error was harmless. Because David has invoked his rights under the Confrontation Clause, we apply the constitutional standard of review, "harmless beyond a reasonable doubt." *Id.* at 1497 (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). After carefully reviewing the record, we conclude that the erroneous admission of Chaf-

fee's testimony regarding Debbie's statement was harmless beyond a reasonable doubt.

47. Zelda and Butler testified that on January 8, 1990, just two days before her session with Chaffee, Debbie stated that David was going to kill her, and we have concluded that Zelda's and Butler's testimony was admissible. The jury could reasonably infer that Debbie's statement to Chaffee stemmed from the same incident two days earlier. In fact, Chaffee testified that he discussed this incident with Debbie in her session on January 10. Consequently, Chaffee's testimony regarding Debbie's statement was cumulative. The erroneous admission of cumulative evidence is harmless error because it does not prejudice the defendant. *See State v. Worley,* 100 N.M. 720, 725, 676 P.2d 247, 252 (1984) (holding Confrontation Clause error harmless because evidence was cumulative).

48. Furthermore, the prosecution did not elicit the "David is going to kill me" statement; Chaffee volunteered it. The record contains enough evidence aside from Chaffee's testimony from which the jury could infer David's intent. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) (holding that Confrontation Clause error may be found harmless after weighing "a host of factors," including "whether the testimony was cumulative," whether the testimony was corroborated or contradicted, and "the overall strength of the prosecution's case"). The trial court did not commit reversible error.

G. Admissibility of Testimony of David Nuckols

49. David's next contention is that the trial court improperly admitted the testimony of David Nuckols (Nuckols), an investigator with the Bernalillo County District Attorney's office, regarding driving times between the scene of the murder and locations where David admitted to being on the evening of Debbie's murder. Nuckols determined these driving times by personally driving the routes on two different afternoons. Defense counsel moved to strike this testimony, and the trial court denied the motion.

50. The evidentiary rule regarding lay opinion testimony reads:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

A. rationally based on the perception of the witness and

B. helpful to a clear understanding of his testimony or the determination of a fact in issue.

SCRA 1986, 11–701. In an instructive discussion of lay opinion testimony, the Court of Appeals held:

the foundation required for admitting such evidence is a showing of first-hand knowledge on the part of the witness, and a rational connection between the observations made and the opinion formed. If these two requirements are present and the witness's opinion might be helpful in the determination of the facts in issue, the opinion is admissible. The requirement of a rational basis is satisfied if the opinion or inference is one which a normal person would form on the basis of the observed facts.

*State v. Luna,* 92 N.M. 680, 684–85, 594 P.2d 340, 344–45 (Ct.App.1979).

51. The State laid the requisite foundation. First, Nuckols based his testimony on first-hand knowledge he obtained from personally driving the routes. Second, his opinion was well within the range of opinions a normal person would form after driving these routes. Third, Nuckols's testimony was helpful because it was relevant to the issue of whether David could have killed Debbie and still have been at the other locations consistent with his alibi.

52. In his brief, David argues that Nuckols's driving times were not reliable or accurate because Nuckols measured the times one and one-half years after Debbie's murder and during the day, even though Debbie was murdered at night. These arguments go to weight and not admissibility. *See State v. Rubio,* 110 N.M. 605, 607, 798 P.2d 206, 208 (Ct.App.), *cert. denied,* 110 N.M. 641, 798 P.2d 591 (1990). Defense counsel fully brought out concerns about reli-

ability and accuracy during cross-examination, and we will not invade the jury's province by reweighing the testimony. The trial court did not abuse its discretion in admitting Nuckols's testimony.

### H. Exclusion of Maria Lena Woodward's Written Statement

53. David also argues that the trial court erred in excluding the written statement to police given by Maria Lena Woodward (Maria), David's mother. Both Maria and a police officer testified about the statement and its contents, so the statement itself was cumulative. "Although relevant, evidence may be excluded if its probative value is substantially outweighed ... by considerations of ... needless presentation of cumulative evidence." SCRA 1986, 11–403. The trial court did not abuse its discretion in refusing to admit the statement. *See State ex rel. State Highway Comm'n v. Steinkraus*, 76 N.M. 617, 622, 417 P.2d 431, 434 (1966) (holding that trial court's refusal to admit cumulative testimony was not abuse of discretion).

### III. SUBSTANTIAL EVIDENCE

54. David also argues there was insufficient evidence to support his convictions. On appeal, we review whether there is substantial evidence, either direct or circumstantial, to support a guilty verdict beyond a reasonable doubt for each element of the convictions. *Apodaca*, 118 N.M. at 765–66, 887 P.2d at 759–60. "We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all permissible inferences in favor of upholding the verdict." *Id.* at 766, 887 P.2d at 760. In conducting this review, we do not reweigh the evidence. *Id.* Likewise, we will not "make inferences or deductions that would cause us to reject testimony relied on by the jury." *Id.* at 767, 887 P.2d at 761.

55. There is no direct evidence implicating David as Debbie's murderer. However, there is substantial circumstantial evidence supporting David's convictions. *See State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988). In addition to the evidence already discussed in this opinion, David's

brother, Richard Woodward (Richard), testified that the day before Debbie's body was discovered David told him that he was going to kill Debbie's new boyfriend, Patterson, and that Debbie was next. Richard also contradicted testimony by their mother, Maria, regarding David's alibi.

56. A former coworker of David testified that several months before Debbie's death David had discussed with him how to kill someone with ether and make it look like an accident, and the autopsy revealed that Debbie died from drowning as a result of acute ether intoxication. Before the murder, David removed the motion detector lights from Debbie's house. The jury could infer that he did this in preparation for committing the murder. Based on testimony regarding David and Debbie's marital discord and the divorce court's outstanding orders, the jury reasonably could infer that David entered Debbie's house without permission, with the intent of committing murder once inside.

57. After Debbie's death, David continued to maintain that Debbie had committed suicide, even after he became aware of the autopsy results. He also attempted unsuccessfully to obtain the proceeds from Debbie's life insurance. Lastly, multiple witnesses testified regarding David's jealousy and unwillingness to accept Debbie's decision to divorce him. We find the evidence sufficient to support the jury's conclusion of guilt beyond a reasonable doubt with regard to each element of first-degree murder, aggravated burglary, and battery.

### IV. DENIAL OF MISTRIAL

58. In his brief, David argues that the trial court's refusal to grant a mistrial after striking witnesses' testimony prejudiced David and denied him due process. However, David does not cite any authority to support his assertion. We will not entertain arguments unsupported in the briefs. SCRA 1986, 12–213 (Repl.Pamp.1992 & Cum.Supp. 1995); *State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994); *see also State v. Fairweather*, 116 N.M. 456, 463, 863 P.2d 1077, 1084 (1993) ("The mere assertion of prejudice, without more, is insufficient to es-

**12**

tablish prejudicial error warranting reversal of a conviction.").

## V. CUMULATIVE ERROR

59. David's final argument is that all of the claimed errors cumulatively amounted to a denial of due process. "The doctrine of cumulative error 'requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial.'" *Hernandez,* 115 N.M. at 26, 846 P.2d at 332 (quoting *State v. Martin,* 101 N.M. 595, 601, 686 P.2d 937, 943 (1984)). This doctrine is to be strictly applied, and David cannot invoke it if the record as a whole demonstrates that he received a fair trial. *Martin,* 101 N.M. at 601, 686 P.2d at 943. In this case, taken together, the cumulative effect of any errors was slight, and we conclude after careful review of the whole record that David received a fair trial. *See State v. Hoxsie,* 101 N.M. 7, 10, 677 P.2d 620, 623 (1984), *overruled on other grounds by Gallegos,* 108 N.M. at 731, 779 P.2d at 108; *State v. Luna,* 93 N.M. 773, 781, 606 P.2d 183, 191 (1980).

## VI. CONCLUSION

60. For the foregoing reasons we affirm David's convictions of first-degree murder, aggravated burglary, and battery.

61. **IT IS SO ORDERED.**

RANSOM and FRANCHINI, JJ., concur.