This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: May 7, 2026**

**No. S-1-SC-40732**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MUHAMMAD ATIF SYED,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Britt M. Baca, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Appellate Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellant Defender
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Walter M. Hart III, Assistant Attorney General
Albuquerque, NM

for Appellee

## DECISION

**VIGIL, Justice.**

**{1}** A jury found Defendant Muhammad Atif Syed guilty of the first-degree willful and deliberate murder of Aftab Hussein (Victim) contrary to NMSA 1978, Section 30-2-

1(A)(1) (1994). Defendant appeals the district court's denial of his directed verdict motion. He argues that there was insufficient evidence that he, in fact, shot Victim and that the shooting was done with deliberate intent. We disagree and affirm. We exercise our discretion to decide this appeal by nonprecedential decision. *See* Rule 12-405(B)(1)-(2) NMRA.

## I.    FACTUAL BACKGROUND

**{2}**    Around 10:00 p.m. on July 26, 2022, Albuquerque Police Department (APD) officers were a block and a half from Victim's home on an unrelated call when they heard a series of loud gunshots nearby and took cover. Once the shooting stopped it took the officers about a minute to walk to Victim's home. They found Victim lying in his driveway next to his car, dead from gunshot wounds. One officer felt the hood of Victim's car and noted it was warm. The key fob to Victim's car lay near his body. An APD detective testified that some of the bullets went through the driver's side of Victim's car and exited out the passenger side of the vehicle. He also stated that, based on the positioning of shell casings, the shooter was approximately twenty feet from Victim.

**{3}**    Witnesses said they saw a dark or white sedan fleeing the scene. On August 7, 2022, news media circulated a photograph of a sedan police believed was connected to a shooting. The vehicle was a gray Volkswagen Jetta with front bumper damage and distinctive seven spoke hubcaps. APD received a tip that Defendant owned the car. Photos from Google Earth showed what appeared to be the same gray Jetta parked outside Defendant's home. A lay witness testified at trial that she knew Defendant from the community and had seen Defendant driving a gray Volkswagen earlier in 2022. One day after media circulated the photo, a caller reported that the distinctive seven spoke hubcaps had been found in a dumpster about a mile and a half from Defendant's house.

**{4}**    APD conducted surveillance of Defendant's home. On August 8, 2022, the day after the photo of Defendant's car was publicized, Defendant ran errands using a different car. That evening, he left Albuquerque in the gray Jetta. He was followed and eventually stopped by APD. When stopped, none of the gray Jetta's wheels had the distinctive seven spoke hubcaps on them; two of wheels had different hubcaps on them and the other two wheels had no hubcaps. The license plate on the car did not match the vehicle.

**{5}**    APD detectives found Defendant's iPhone in the gray Jetta. An expert in digital forensics examined the phone and testified at trial. She said the phone was named "Syed's iPhone" and the phone's iCloud account was connected to an email address containing Defendant's full name. Pursuant to a search warrant, the expert received and reviewed T-Mobile records for Defendant. The expert also examined the phones of Defendant's family members. The expert testified that based on a life pattern analysis of the cell phone data, each family member had their own cell phone and did not share phones.

**{6}**    The digital forensics expert also testified regarding some of the applications (apps) on Defendant's phone. When seized, the map app on Defendant's iPhone was

open and actively providing directions to Texas. The expert also testified that the note taking app on Defendant's phone contained the following memo: "Test in Albuquerque about AKM 47-7.62mm-test 9:50-7/26/2022-After-." The prosecution argued during closing statements that the word "After" was the auto corrected first name of the Victim—Aftab.

{7}     The digital forensics expert also testified regarding the phone's location the night of the murder. She stated that cell tower data showed Defendant's phone left his house at 8:54 p.m. and travelled east to Victim's neighborhood. The phone stayed in Victim's neighborhood for twenty-five minutes. At 10:02 p.m., directly after the shooting, Defendant's phone travelled from Victim's neighborhood back to Defendant's house.

{8}     After obtaining a search warrant, officers searched Defendant's home and found an AK 47-style 7.62 X 39 caliber semi-automatic rifle under Defendant's bed. Through its investigation APD discovered the rifle had been bought at BMC Tactical, a gun store in Albuquerque. A clerk from the gun store testified at trial. He reported that Defendant had purchased the rifle and picked it up at the store eleven days before the shooting. Surveillance footage from the gun store showed Defendant arrived in his gray Jetta and purchased the rifle. A firearms and tool mark expert testified at trial that nine spent rifle casings and four bullet fragments collected from the scene of the shooting had been fired from Defendant's rifle. Two spent casings found on the floor inside the gray Jetta also came from Defendant's rifle. Additionally, a bullet recovered from Victim's body during his autopsy matched Defendant's rifle.

{9}     The medical examiner who performed Victim's autopsy testified that Victim was shot eleven times. She testified that Victim's wounds were consistent with Victim having been shot twice after he had fallen to the ground. The medical expert testified that the cause of death was multiple gunshot wounds and the manner of death was homicide.

## II.    STANDARD OF REVIEW

{10}     When reviewing the district court's denial of a motion for directed verdict,[1] we ask "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314; *id.* ¶ 20 (indicating that the substantial evidence standard applies when we review the denial of a motion for directed verdict). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Montoya*, 2015-NMSC-010, ¶ 53, 345 P.3d 1056 (alteration, internal quotation marks, and citation omitted). "[W]e view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of a verdict of conviction." *State v. Garcia*, 1992-NMSC-048, ¶ 24, 114 N.M. 269, 837 P.2d 862. We "disregard all

---

[1]Defendant argues that when ruling on the motion for directed verdict, the district court misstated the sufficiency of evidence standard. Additionally, he states that the district court did not believe there was evidence of Defendant's state of mind. The State argues that the district court simply misspoke. Regardless of whether the district court erred or misspoke, we review the district court's decision under the correct standard for sufficiency of the evidence.

evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

## III. DISCUSSION

### A. Identity of the Shooter

{11}    Defendant argues that there was not substantial evidence from which a jury could reasonably infer he was the shooter. He claims that without an eyewitness, fingerprints, or DNA evidence tying him to the shooting, it is possible a member of his family used his gun, car, and phone when committing the murder. Quoting this Court, he argues "There must . . . be actual evidence—not speculation—of a criminal act." *State v. Consaul*, 2014-NMSC-030, ¶ 92, 332 P.3d 850. However, the substantial evidence needed for a conviction can be direct *or* circumstantial. *See Sutphin*, 1988-NMSC-031, ¶ 21. The jury may rely on circumstantial evidence to reasonably infer that Defendant shot Victim. *See State v. Apodaca*, 1994-NMSC-121, ¶¶ 8, 16, 118 N.M. 762, 887 P.2d 756 (holding that although there was no direct evidence [the d]efendant and not her daughter killed the victim, there was sufficient circumstantial evidence); *see also State v. Woodward*, 1995-NMSC-074, ¶ 55, 121 N.M. 1, 908 P.2d 231 (explaining that even without direct evidence that the defendant killed his wife, there was sufficient circumstantial evidence to convict the defendant), *rev'd on other grounds by Woodward v. Williams*, 263 F.3d 1135, 1142-43 (10th Cir. 2001).

{12}    At trial, the State provided circumstantial evidence showing that Defendant was more closely connected to the car, rifle, and phone used in the murder than anyone else. Witnesses testified that a sedan sped away from the murder scene. When APD circulated a photo of the vehicle suspected to be involved in the shooting—a gray Jetta with front bumper damage and distinctive seven spoke hubcaps—they received a tip that the car belonged to Defendant. A member of the community testified that she knew Defendant and had previously seen Defendant driving a gray Volkswagen. Surveillance footage from the gun store showed Defendant driving the gray Jetta with distinctive rims when he purchased the rifle. The gray Jetta was parked outside Defendant's home, and he was driving the gray Jetta when stopped by APD. This evidence tied Defendant, not another individual, to the gray Jetta and the shooting.

{13}    Defendant was also closely linked to the rifle. The gun store clerk testified that Defendant purchased the rifle and picked it up only a week and a half before the shooting. The bullets and casings found at the crime scene matched Defendant's rifle, as did two shell casings found in Defendant's gray Jetta and the bullet recovered from Victim's body. Moreover, Defendant's rifle was found hidden under his bed. Therefore, it was reasonable for the jury to infer that Defendant used his rifle to shoot Victim and then hid it under his bed.

{14}    Defendant's phone also connected him to the murder. Cell phone data from Defendant's phone showed it was at or very near the murder scene. Additionally, the phone travelled back to Defendant's neighborhood immediately after the shooting. Defendant's phone also contained a note listing the date and time of the murder, as well

as the weapon used and what is, apparently, an autocorrected version of Victim's name. At trial the digital forensics expert testified that the phone was named "Syed's iPhone" and was linked to Defendant's email address. She also explained that, based on her life pattern analysis of the phones of Defendant and his family members, they did not share phones. From these facts, the jury could reasonably infer it was Defendant who carried his phone with him to the scene of the crime and it was Defendant who either planned or documented the murder in the note app on his phone.

{15} Defendant's behavior after the shooting also provided the jury with substantial evidence that he, not a family member, was the shooter. The day after the media circulated a photo of Defendant's car, Defendant left Albuquerque. When stopped, he was driving the gray Jetta but the distinctive hubcaps and matching license plate had been removed. Defendant's map app was actively providing him with directions to Texas. From this evidence the jury could reasonably infer Defendant was trying to avoid suspicion by disguising his car and avoid arrest by fleeing the state. They could conclude that Defendant's behavior showed a guilty conscience indicating that he, and not a family member, killed Victim. Therefore, viewing the evidence in the light most favorable to the conviction, there was substantial evidence from which a jury could reasonably infer Defendant shot Victim.

## B.   Deliberate Intent

{16} To convict Defendant for first-degree willful and deliberate murder, the jury had to find Defendant acted with deliberate intent. The jury was instructed that

> A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time.

UJI 14-201 NMRA. Defendant argues that the State did not present evidence of motive or any other evidence of Defendant's state of mind, so, in coming to a guilty verdict, the jury engaged in speculation or stacked inferences. We disagree. Often, the jury must rely on circumstantial evidence. *See Montoya*, 2015-NMSC-010, ¶ 53 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)). Circumstantial evidence can provide sufficient evidence of deliberate intent. *See Rojo*, 1999-NMSC-001, ¶¶ 23-24 (concluding from circumstantial evidence that there was sufficient evidence of deliberate intent). And while motive can provide evidence of a defendant's state of mind, we have held that motive is not necessary to show deliberate intent. *See State v. Thomas*, 2016-NMSC-024, ¶¶ 38-39, 376 P.3d 184.

{17} The State did not provide evidence of Defendant's motive but it did provide substantial evidence as to Defendant's state of mind. The note in Defendant's phone described the shooting as a "test." The word "test" indicates deliberation and planning. A

reasonable jury could infer that Defendant planned the shooting and either described his plan in his phone before the shooting or documented the planned "test" afterward.

**{18}** Additionally, we have held that intent can be inferred from the manner in which the victim was killed. *See State v. Flores*, 2010-NMSC-002, ¶¶ 22, 24, 147 N.M. 542, 226 P.3d 641 (concluding that lying in wait for the victim provided evidence of the defendant's deliberate intent), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 87, 478 P.3d 880; *State v. Guerra*, 2012-NMSC-027, ¶ 29, 284 P.3d 1076 (concluding that evidence of "overkill" supported conviction for willful and deliberate murder); *State v. Cunningham*, 2000-NMSC-009, ¶ 28, 128 N.M. 711, 998 P.2d 176 (concluding that evidence victim was shot while incapacitated supported first-degree murder conviction). Defendant picked up the murder weapon from the gun store only eleven days before the shooting. Cell phone data showed Defendant arrived in Victim's neighborhood well before Victim and waited in the neighborhood until Victim arrived home. There was evidence—Victim's warm car hood and his key fob—which indicated that Victim was shot immediately upon arriving at home. From these facts a jury could reasonably infer Defendant planned to kill Victim ahead of time, waited for Victim to come home from work, and shot Victim right when he arrived home.

**{19}** Additionally, Victim was shot eleven times with a high-powered AK-47 rifle from a distance of only twenty feet. He was shot twice after he had fallen to the ground. Based on the short distance from which Defendant shot Victim, the weapon Defendant used, the large number of shots fired, and the shooting of Victim even after he had fallen down, the jury could reasonably infer Defendant deliberately killed Victim.

**{20}** Citing *State v. Slade*, Defendant argues that owning a gun and firing multiple shots cannot provide sufficient evidence of intent. 2014-NMCA-088, ¶¶ 27, 35, 331 P.3d 930. But the Court of Appeals in *Slade* acknowledged that, "although each component may be insufficient to support the conviction when viewed alone, they may form substantial . . . support for the conviction when viewed as a whole." *Id.* ¶ 21 (brackets, internal quotation marks, and citation omitted); *see also Flores*, 2010-NMSC-002, ¶ 24 (considering the "totality of the evidence"). Looking at the totality of the evidence in this case, the State provided more evidence of intent beyond the fact that Defendant owned the rifle and fired eleven shots. As already noted, the manner in which Victim was killed and the note in Defendant's phone provide strong evidence of intent. Viewing the evidence in the light most favorable to the guilty verdict, there was substantial evidence from which a reasonable jury could find Defendant guilty of first degree willful and deliberate murder.

## IV.     CONCLUSION

**{21}** We affirm the judgment and sentence.

**{22}**     **IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Chief Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**BRIANA H. ZAMORA, Justice**